**Joseph HERTEL, Plaintiff,**

v.

**AMERICAN EXPORT LINES, INC., Defendant.**

United States District Court
S. D. New York.

Jan. 3, 1964.

Jacob Rassner, New York City, for plaintiff. Donald D. Olman, New York City, of counsel.

Hanner, Fitzmaurice & Onorato, New York City, for defendant. James G. Barron, Jackson Heights, N. Y., of counsel.

WEINFELD, District Judge.

The plaintiff, a longshoreman injured aboard a vessel owned by his employer, seeks by his amended complaint to recover damages upon two claims:

(1) breach of warranty of seaworthiness, and

(2) negligence under the Jones Act.

He now moves to strike as legally insufficient the defense interposed by the employer shipowner that plaintiff's sole and exclusive remedy is under the Longshoremen's and Harbor Workers' Compensation Act,[1] and that it duly complied with the provisions thereof, pursuant to which payments have been and are still being made to plaintiff. The Court is of the view that insofar as the motion

---

1. 44 Stat. 1424–46 (1927), as amended, 73 Stat. 391–92 (1959), 33 U.S.C. §§ 901, et seq. (1958), as amended, 33 U.S.C. § 933 (Supp. II, 1959–60).

to strike is directed to the unseaworthiness claim it must be granted, and as to the Jones Act claim, it must be denied.

The right to maintain the unseaworthiness claim finds full support in Reed v. The Yaka.[2] There a longshoreman was injured on board a vessel while it was under bareboat charter to his employer. He filed a libel in rem against the shipowner, who impleaded the employer-charterer by reason of an indemnity agreement. The District Court awarded judgment in favor of the longshoreman and upon the claim over against the employer-charterer, which was found responsible for an unseaworthy condition that caused the longshoreman's injuries. The Court of Appeals for the Third Circuit reversed. It reasoned that (1) the shipowner could not be held liable because the unseaworthy condition arose after the vessel had been bareboat chartered to the longshoreman's employer, and (2) the employer-charterer could not be held for unseaworthiness because the Longshoremen's Act provided the sole and exclusive remedy against it. Accordingly the Court of Appeals concluded that, absent underlying personal liability on the part of either the shipowner or the charterer, no libel in rem was maintainable against the vessel. The Supreme Court reversed, and although it was pressed by all parties[3] to decide the case upon the issue of whether or not personal liability was essential to support the in rem proceeding, the Court found "it unnecessary to decide whether a ship may ever be held liable for its unseaworthiness where no personal liability could be asserted because, in our view, the Court of Appeals erred in holding that Pan-Atlantic [the employer] could not be held personally liable for the unseaworthiness of the ship which caused petitioner's injury."[4]

The underlying rationale of the reversal was grounded upon the broad humanitarian policy of the doctrine of unseaworthiness and its purpose to protect all those engaged in the ship's service against the hazards of unseaworthiness. It rested upon the absolute and nondelegable duty of a shipowner, whether the actual owner or owner *pro hac vice*, to live up to the warranty of seaworthiness, and in the event of a breach, to afford the traditional remedies to an injured person to whom the duty is owing, whether he is a crew member or performing a crew member's work. Accordingly, the Court held that the employer, as the bareboat charterer, was personally liable to its employee for the unseaworthiness of the vessel and that the Longshoremen's Act did not bar him from maintaining the libel in rem. To have denied him relief upon the unseaworthiness claim would have negated the conceptual doctrine of Seas Shipping Co. v. Sieracki,[5] and its progeny, whereby a longshoreman engaged in the performance of the traditional work of a crew member is afforded the same rights upon such a claim as a regular crew member.

The defendant urges that The Yaka is to be distinguished because it was an in rem action, whereas the instant one is brought on the civil side in personam. However, the hard core of the Court's decision, based as it is upon personal liability of the bareboat charterer, renders the claimed distinction invalid. Neither does the fact that the stevedore has been receiving payments under the Act bar the maintenance of this suit. In The Yaka the employer also interposed an affirmative defense that it had complied with the terms of the Longshoremen's Act and that it had paid or caused to be paid to its employee all the

2. 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963).

3. See Transcript of Record, Petition for Certiorari, and Briefs of Petitioner and Respondents. See also 373 U.S. at 417,

83 S.Ct. at 1354, 10 L.Ed.2d 448 (Harlan, J., dissenting).

4. 373 U.S. at 412, 83 S.Ct. at 1351, 10 L.Ed.2d 448.

5. 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

benefits required thereunder.[6] Thus the cases are indistinguishable on this point.

With respect to the Jones Act claim a different conclusion is compelled. In The Yaka no claim of negligence was advanced or considered under the Jones Act. The only claim presented was that of breach of the warranty of seaworthiness and, as already noted, the holding rested essentially upon its applicability. In rejecting the employer-charter plea that the Longshoremen's Act barred the suit, the Supreme Court said:

> "[O]nly blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan-Atlantic [the employer-charterer] was not only an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and non-delegable obligation of seaworthiness which it should not be permitted to avoid." [7]

To permit the Jones Act claim would extend the holding of the case beyond permissible limits and result, in effect, in overruling Swanson v. Marra Bros.,[8] which makes it clear that a Jones Act claim may not be pursued by an injured longshoreman against his employer, and that his sole remedy, whether injured on navigable waters or on shore, is under the Longshoremen's Act. Nowhere does the Supreme Court indicate that Swanson is overruled.

Moreover, crucial in the Court's reasoning was that "petitioner's [the longshoreman] need for protection from unseaworthiness was *neither more nor less* than that of a longshoreman working for a stevedoring company." [9] To do as plaintiff urges with respect to the Jones Act claim is to give him *more* protection than a longshoreman working for a steve-

dore has. The Yaka, far from supporting plaintiff on this point, is actually authority against him. There, the Court did not consider the literal wording of the Longshoremen's Act controlling because it did not want to vary the remedies available to petitioner "simply because "Pan-Atlantic was not only the owner *pro hac vice* of the ship but was also petitioner's employer." [10] Plaintiff's position with respect to the Jones Act claim, contrary to The Yaka, would vary the remedies available to him because his employer is also the owner *pro hac vice*.

6. Appellants' Consolidated Appendix, p. 24a, Reed v. S.S. Yaka, 307 F.2d 203 (3d Cir. 1962), rev'd, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963).

7. 373 U.S. at 415, 83 S.Ct. at 1353, 10 L. Ed.2d 448.

8. 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946).

9. 373 U.S. at 415, 83 S.Ct. at 1353, 10 L. Ed.2d 448 (emphasis supplied).

10. 373 U.S. at 414, 83 S.Ct. at 1352–1353, 10 L.Ed.2d 448.