George **MICULKA**, Plaintiff,

v.

**AMERICAN MAIL LINE, LTD.,**
Defendant.

George **MICULKA**, Libelant,

v.

The **STEAMSHIP WASHINGTON MAIL,**
her tackle, apparel and engines and all persons claiming any interest therein, Respondents.

Civ. Nos. 64–64, 64–168.

United States District Court
D. Oregon.

May 21, 1964.

**666**

Philip A. Levin, Pozzi, Levin, & Wilson, Portland, Or., for plaintiff.

Floyd A. Fredrickson and Lloyd W. Weisensee, Gray, Fredrickson & Heath, Portland, Or., for defendant.

EAST, District Judge.

It appears from the complaints in the above two actions that:

On March 15, 1962, the plaintiff and libelant George Miculka (Longshoreman) was an employee of the defendant American Mail Line, Ltd. (American-Stevedore) at the time the self-same American Mail Line, Ltd. (American-Charterer) was a bareboat charterer of the respondent vessel S.S. WASHINGTON MAIL; and

While so employed and in the course of discharging cargo from the vessel, Longshoreman was injured as a direct result of the improper rigging of gear and unseaworthiness of the vessel;

On January 28, 1964, Longshoreman instituted the removed *in personam* cause No. 64–64 from an Oregon state court against American under its Stevedore-department hat; and

On March 31, 1964, Longshoreman instituted the *in rem* admiralty cause No. 64–168 against the vessel chartered by American under its Charterer-department hat.

Now American, while wearing its Stevedore's hat, moves to dismiss and for a summary judgment in cause No. 64–64 for the reason that the Longshoreman has the benefits of the Longshoremen's Act (Title 33 U.S.C.A.), and under the provisions of § 905 American is immune from action; and

Vessel moves for a summary judgment in its favor in the admiralty cause No. 64–168 on the grounds that American, while in all other respects of her service wears its Charterer's hat, nevertheless, wears only its Stevedore's hat with respect to all incidents of employment of Longshoreman, and, since American-Stevedore is immune from *in personam* action by Longshoreman, so is the unseaworthy chartered vessel.

American may indeed wear either or as many new hats at such times as it wishes, but not two at a time nor one in disguise of or substitute for another, for the reason that while wearing either

hat it must accept whatever the hat becomes it—all compliments and the benefits, with the corresponding duties and obligations attached. In cause No. 64–64, American's duties as a stevedore are involved, and in cause No. 64–168 we are dealing with American's duties as a bareboat charterer.

The Supreme Court, in Reed v. S.S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, 1963 A.M.C. 1373, taught us that bareboat charterers of vessels, by assuming the additional function of performing the necessary stevedoring services for the vessel, do not clothe the vessel with immunity from answering *in rem* for unseaworthy causation of injuries to longshoremen employed by the bareboat charterer.[1]

 Accordingly, I conclude that the motion to dismiss and the motion for summary judgment in favor of the defendant in cause 64–64, and each of them, should be allowed, and the motion for summary judgment in favor of the vessel in 64–168 should be denied.

██ The vessel in No. 64–168, sponsored by American and now faced with the teachings of Reed, seeks to avoid the washing effect of its wake with the contention that the thrust of the decision should be allowed only prospective effect and not the unguarded-against and manifest hardship and unjust retrospective effect upon American as Charterer, who must ultimately be responsible and return the vessel to the owner in her whole and seaworthy condition.[2]

The vessel would have us read Reed as overruling prior holdings and law announced by the Court. Such a reading is not permissible without doing violence to the clear language, or a breaking up

of context, as does the vessel's memorandum, in stating that:

> " 'Pan-Atlantic relies simply on the literal wording of the statute, and it must be admitted that the statute on its face lends support to Pan-Atlantic's construction. But we cannot now consider the wording of the statute alone. \* \* \*' " Reed, supra, 373 U.S. p. 414, 83 S.Ct. p. 1353.

As I read Reed, we are reminded to view the statute in the light of the rule of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 and Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133, and then advised that:

> "[The court has] previously said that the Longshoremen's Act 'must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.' We think it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service. [Longshoreman's] need for protection from unseaworthiness was neither more nor less than that of a longshoreman working for a stevedoring company." 373 U.S. at p. 415, 83 S.Ct. at p. 1353.

Clearly, nothing in the Court's language indicates any notice or acknowledgement of a prior contrary ruling or holding by the Court, let alone an express overruling and discarding of prior rule or law.

---

1. In the Reed case, one of the defendants, Pan-Atlantic, was both the employer of the injured plaintiff longshoreman and the bareboat charterer of the vessel on which the longshoreman was injured. The Supreme Court held that the Longshoremen's Act did not bar the injured longshoreman from relying on Pan-Atlantic's liability as a bareboat charterer (the owner *pro hac vice*) for the Yaka's unseaworthiness in order to support his libel.

2. The bareboat charterer is personally liable for the unseaworthiness of a chartered vessel. Reed, supra, pp. 412–413, 83 S.Ct. 1349.

However, assuming that Reed did overrule and relegate to the ashcan of the past case law of the Court indicating a vessel's immunity from the claims of injured longshoremen hired by her owners who also performed the stevedoring services, should this district court limit the thrust of Reed to prospective effect only? The answer is no.

Bear in mind that American

(a) Did not suffer the unseaworthiness of the vessel *upon reliance* of pre-Reed case law of the court, nor

(b) Did any rights of immunity from the duties of an owner *pro hac vice* as the bareboat charterer become vested in American by reason of pre-Reed case law of the Court. Accordingly, no solace for American can be found in this saving clause:

> "An overruling decision cannot operate retrospectively so as to impair the obligations of contracts entered into, or injuriously affect vested rights acquired, in reliance on the overruled decision." 21 C.J.S. Courts § 194, p. 329.

The general rule of the effect of overruling judicial decisions is succinctly stated in Safarik v. Udall, 113 U.S.App. D.C. 68, 304 F.2d 944, 949 (1962):

> "It is a general rule that a decision of a court overruling an earlier decision is retrospective, as well as prospective, in its operation."

One rationale for the above rule, and what is referred to as the traditional Blackstonian explanation, is set out in Legg's Estate v. Commissioner of Internal Revenue, 114 F.2d 760, 764 (4th Cir. 1940):

> "Decisions are mere evidences of the law, not the law itself; and an overruling decision is not a change of law but a mere correction of an erroneous interpretation. We accept this latest expression of the courts of Pennsylvania in the Warren case [In re Warren's Estate, 320 Pa. 112, 182 A. 396, 104 A.L.R. 1345], therefore, not as a change in the law, but as the correct expression of the common law then and theretofore prevailing in that state."

The resulting retrospective effect of overruling decisions, which are in and of their language silent as to effect and wash, is pointedly delineated by the dissent to a recent decision of the Supreme Court of Oregon where the long-standing, judicially-established doctrine holding charitable organizations immune from liability for the torts of their servants was re-examined and relegated to the ashcan of the past. Hungerford v. Portland Sanitarium and Benevolent Ass'n., Or., 384 P.2d 1009 (1963). In Hungerford, the Court, in specific and expressed language, overruled its own 1955 decision upholding the charitable-immunity rule. Landgraver v. Emanuel Lutheran Charity Board, 203 Or. 489, 280 P.2d 301 (1955). The majority opinion in Hungerford is silent as to whether it is intended to have either retrospective or prospective effect. However, in his dissent, Justice Rossman declares that the new rule must have retrospective effect:

> "Had the legislature terminated the charities' immunity from tort liability, its enactment would not have had any retrospective operation. It would not have revived any old claims. It would have affected only claims that occurred after the measure was adopted. In short, it would have operated only prospectively. * * * But, when this court pronounces the law upon a subject under scrutiny, its utterances take effect at once. The court does not make the law; it merely finds it. Therefore, when it pronounces it, it must necessarily be assumed that its pronouncement represents the law as it always was. Accordingly, when the majority this day holds that there is no immunity upon the part of charities from tort liability, its holding is retrospective as well as prospective. All claims against charities are affected except those barred by the statute of limitation." 384 P.2d 1013.

Other jurisdictions have expressly held that their decisions upsetting the traditional rules of immunity are to have instant case and prospective effect only. Parker v. Port Huron Hospital, 361 Mich. 1, 105 N.W.2d 1 (1960):

> "In the interests of justice and fairness, in view of the new ruling and the reliance that some, albeit few, charitable, nonprofit hospital corporations may have placed on the old ruling, and may have failed to protect themselves by the purchase of available insurance, we believe the new rule should apply to the instant case and to all future causes of action arising after September 15, 1960, the date of the filing of this opinion." 105 N.W.2d 14.

Molitor v. Kaneland Comm. Unit Dist., 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R.2d 469 (1959), cert. den. 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900. See, e. g. Meredith v. State Tax Commission, 163 Or. 305, 96 P.2d 1082, 125 A.L.R. 1417.

Sometimes a jurisprudential statement of the obvious is difficult to find, but a diligent search has produced at least one:

> " 'Ordinarily, a decision of a court of last resort overruling a former decision is retrospective as well as prospective in its operation, unless specifically declared by the opinion to have a prospective effect only. 14 Am.Jur. p. 345, Sec. 130; 21 C. J.S. Courts p. 326 § 194.' " Aronson v. Congregation Temple De Hirsch, Fla.App., 123 So.2d 408, 411 (1960), citing Florida Forest and Park Service v. Strickland, 154 Fla. 472, 18 So.2d 251 at 253.

I conclude here that the silence is thunderous and that the effect of Reed is "retrospective as well as prospective" and the libel in 64–168 does "state a claim upon which relief can be granted."

American urges that, since it sometimes wears a stevedore's hat, it relied upon the immunity from action provided by the Longshoremen's Act in lieu of obtaining liability insurance for protection upon claims of its longshoremen working ships under charter to it. So be it, for if American did rely upon such statutory immunity in lieu of liability insurance for protection from claims against it as a bareboat charterer, it was foolhardy, or, in any event, not a cautious, prudent bareboat charterer, as the perils of the sea sent the owners of vessels to Lloyd's at a very early date, unless he was self-reliant and self-sufficient.

Counsel for the defendant in cause No. 64–64, and proctor for libelant in cause No. 64–168 may submit appropriate orders.