Delbert A. COURSE, Plaintiff,

v.

PACIFIC INLAND NAVIGATION COMPANY, a corporation, Defendant.

Civ. No. 64–225.

United States District Court
D. Oregon.

Oct. 20, 1964.

Allen T. Murphy, Jr., Green, Richardson, Green & Griswold, Portland, Or., for plaintiff.

Eugene D. Cox, Gray, Fredrickson & Heath, Portland, Or., for defendant.

EAST, District Judge.

The defendant Pacific Inland Navigation Company (Pinco) owns and operates barges and tugs, with shore facilities, upon the navigable waters of the Columbia and Willamette Rivers and is a citizen of the State of Washington; and

The plaintiff Delbert A. Course (Course) is employed by Pinco as a har-bor worker (marine electrician) on Pinco's tugs and barges, at random as directed, as distinguished from being a member of a crew of any particular vessel, and is a citizen of the State of Oregon.

Course alleges that while working aboard one of Pinco's tugs in the course of his employment "and through the negligence of (Pinco) and the unseaworthiness of the vessel, (he) fell through an inadequately covered hole on the deck, causing injuries * * *" and seeks damages from Pinco on account of his injuries.

Course alleges no jurisdictional facts, except, inferentially, the diversity of citizenship and requisite amount in controversy.

Pinco moves to dismiss Course's suit "on the grounds and for the reasons that (Course's) claim is cognizable only in admiralty in rem against the tug 'BANNOCK' because * * *" the parties are subject to the provisions of the Harbor Workers' Act,[1] and Pinco has paid compensation to Course thereunder, and accordingly is immune from action through the workings of § 905. Pinco faces this Court with its own opinion in two causes lately in this Court, Miculka v. American Mail Line, Ltd., Civil No. 64–64 (Miculka v. The SS Washington Mail), Civil No. 64–168, 229 F.Supp. 665, 1964.

In these cases this Court attempted to learn and apply the teachings of Yaka:[2]

To the in personam civil cause No. 64–64 of an injured longshoreman against his employer-stevedore, who was also the bareboat charterer of the vessel SS WASHINGTON MAIL upon which the longshoreman, at the time he was injured, was working as a ship-serving longshoreman; and

To the in rem admiralty cause No. 64–168 of the same injured longshoreman against the vessel under charter to the employing stevedore as aforesaid.

---

1. Longshoremen and Harbor Workers' Compensation Act, Title 33 U.S.C.A. §§ 901 and 905.

2. Reed v. SS Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, 1963 A.M.C. 1373.

In the two causes, the self-same plaintiff and libelant, respectively, alleged unseaworthiness of the vessel by reason of the use of improperly rigged cargo-discharging gear as causation of his injuries. The defendant AMERICAN MAIL LINE, in the in personam civil cause 64–64, and the respondent vessel in the admiralty in rem cause 64–168, each moved to dismiss the respective causes. The defendant AMERICAN MAIL'S motion was allowed, and the respondent vessel's motion was denied. 229 F.Supp. at p. 167.

Course now urges that the allowance of AMERICAN MAIL'S motion to dismiss was erroneous in view of Hertel v. American Export Lines, Inc., 225 F.Supp. 703 (S.D.N.Y.1964), a case not considered by this Court when opining the Miculka causes, and cannot be controlling or followed here.

It must be recalled and pinpointed that the in personam civil cause 64–64 was a removed (diversity) state court Jones Act action (Title 46 U.S.C.A. § 688) by a ship-working longshoreman against the longshoreman's employer-stevedore, who was, incidentally, also the ship's bareboat charterer; and

The in rem admiralty cause 64–168 was an original admiralty suit by the ship-working longshoreman against the vessel, which was, incidentally, under bareboat charter to the longshoreman's employer-stevedore.

As was plainly stated in Miculka, 229 F.Supp. at p. 667, we were, in the removed state court cause No. 64–64 (assumed to be a Jones Act claim[3]), dealing with AMERICAN'S duties as a stevedore, and in the admiralty in rem cause 64–168, AMERICAN'S duties as a bareboat charterer, and, necessarily, the vessel's obligation thereunder.

All Miculka's causes attempted to espouse was:

The truism that a maritime concern could engage in as many enterprises as it wished, but when a stevedoring company also engaged as an owner and operator of vessels, it and its vessels had to accept its respective maritime duties to ship servers as to seaworthiness and could not use some other activity or capacity as a shield against those owner's obligations; and

The specific learning from Yaka (at 229 F.Supp. 667):

"* * * that bareboat charterers of vessels, by assuming the additional function of performing the necessary stevedoring services for the vessel, do not clothe the vessel with immunity from answering *in rem* for unseaworthy causation of injuries to longshoremen employed by the bareboat charterer."

To the extent that the Miculkas are read to relieve AMERICAN MAIL of personal liability for a breach of its implied warranty to shipworking longshoremen of the seaworthiness of the chartered vessel, they are erroneous, cannot stand, and are repudiated; however,

To the extent that the Miculkas are read to hold AMERICAN MAIL as a bareboat charterer not liable to a shipworking longshoreman under the Jones Act, they are sound and must be sustained.[4]

Returning now to the case at hand, I am satisfied that Course, as a harbor worker in ship's service, cannot proceed against and recover from Pinco (either as owner of the tug or as the harborworker's employer) while riding the vehicle of a Jones Act claim.[5] Swanson v. Marra Bros., Inc., 328 U.S. 1, 66 S.Ct.

---

3. No claim was made by plaintiff Course that the removed civil action complaint should be considered as an in personam claim in admiralty.

4. No doubt, had counsel and the Court been better advised, AMERICAN MAIL LINE could have been held as a party respondent in the admiralty cause 64–168 through a consolidation of the causes.

5. Plaintiff urges that Hawn [Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143] recognizes that he has a cause of action against the shipowner for shipowner's negligence, and so it does.

869, 90 L.Ed. 1045 (1946), and Kyles v. Elwell & Co., 296 F.2d 703 (7th Cir. 1961).

"In view of the doctrine expounded by Swanson that a longshoreman could not have recourse to the Jones Act in a suit against his employer, we fail to see how Sieracki [Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099] is authority for allowing plaintiff to rely on the Jones Act in a suit against the shipowner who was *not* his employer. Sieracki does not abrogate the rule that the Jones Act applies only where the relationship of employer and employee exists." Kyles, supra, p. 704.

And I add—when that relationship of employer and employee is not regulated by the Harbor Workers' Act.

Hertel, supra, tells us that to permit the ship-working longshoreman to enforce his Jones Act claim against the owner of the vessel, who was, incidentally, his employer-stevedore "would extend the holding of the case [Yaka] beyond permissible limits and result, in effect, in overruling Swanson * * *. Nowhere does the Supreme Court indicate that

"The fact that Sieracki upheld the right of workers like Hawn to recover for unseaworthiness does not justify an argument that the Court thereby blotted out their long-recognized right to recover in admiralty for negligence." Hawn, supra, 346 U.S. p. 413, 74 S. Ct. p. 207.

The Court was answering a question raised for the first time in the entire case by a concurring opinion. Of course, as stated in the footnote to the above quote, a shipowner must always answer for his common-law or maritime negligent hurt to persons rightfully transacting business on his ship. Suffice to say, there is no assertion here that the alleged " * * * negligence of (Pinco) * * *" was other than conduct related to suffering " * * * an inadequately covered hole on the deck causing injuries * * *."

If plaintiff is seeking to recover on account of wrongful conduct wholly disassociated with Pinco (ship owner's) duty to supply a seaworthy vessel, he

Swanson is overruled." 225 F.Supp. p. 705.

■■ It is established by Yaka and Miculka, supra, that Course can proceed against and recover from the offending tug on account of her alleged unseaworthiness, and it necessarily follows that the tug's owner, Pinco, can be held personally liable on a breach of its duty to supply the harbor worker in the tug's service with a seaworthy vessel. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872 (1946), assimilates the harborworking longshoreman to the position of the seaman in that:

" * * * for injuries incurred while working on board the ship in navigable waters the stevedore [longshoreman] is entitled to the seaman's traditional and statutory protections, regardless of the fact that he is employed immediately by another than the owner. For these purposes he is, in short, a seaman because he is doing a seaman's work and incurring a seaman's hazards." 328 U.S. p. 99, 66 S.Ct. pp. 879–880.

For the same reasons, Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, assimilated the harbor-working carpenter

has not let it be known, as he does allege that the self-same ship's condition causing his injuries was both negligence of "Pinco and" unseaworthiness of the vessel. Perhaps this language of Justice Frankfurter, 346 U.S. p. 418, 74 S.Ct. p. 209 will be consoling to plaintiff:

"Since unseaworthiness affords [harbor workers] recovery without fault and has been broadly construed by the courts, e. g., Mahnich v. Southern S.S. Co., note 2, supra [Mahnich v. Southern SS Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561], it will be rare that the circumstances of an injury will constitute negligence but not unseaworthiness. Even if such a case should arise, the longshoreman, were he barred from suing the shipowner [employer] for negligence, has available the statutory remedy against his employer which Congress has given him in the Longshoremen's and Harbor Workers' Compensation Act."

to the position of seaman, and I would here assimilate the harbor-working electrician to the position of seaman.

Petterson v. Alaska SS Co., 205 F.2d 478, at p. 480 (9th Cir. 1953), affirmed 374 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, says this shipowner's duty to supply a seaworthy vessel " * * * is described [Sieracki], 328 U.S. at page 95, 66 S.Ct. [872] at page 877, as 'a form of absolute duty owing to all within the range of its humanitarian policy' and further, * * * at page 100, 66 S.Ct. [872] at page 880, as 'peculiarly and exclusively the obligation of the owner. * * * one he cannot delegate.' "

Under this theory of liability, Pinco is being held responsible for its activities as a shipowner to a harbor worker in the ship's service, and not as the employer-stevedore of Course. This concept of reciprocal rights and duties leaves the injured shipworker in the same posture as he would have been if the tug had been owned by a third party; and it leaves Pinco, as the shipowner, in the same posture as it would have been if the harbor worker in ship's service had been the employee of a third party.

Hertel, 225 F.Supp. p. 705, says that to allow Course to proceed under the theory of a Jones Act claim, contrary to Yaka, would

> " * * * vary the remedies available to him because his employer is also the owner pro hac vice."

I venture that to allow Pinco to utilize its employer's immunity from employees' actions under § 905, supra, as a shield against its shipowner's liability, is to deprive Course of a maritime remedy because the shipowner is, incidentally, his employing stevedore. This result would vitiate the intent of Congress in enacting the Harbor Workers' Act.

Yaka and the Miculkas refused to give the vessel such immunity, and Hertel refused to give the owner pro hac vice such immunity, and so must owner Pinco be refused such immunity here.

I paraphrase Yaka, 373 U.S. pp. 415–416, 83 S.Ct. p. 1353:

The Supreme Court previously said that the Harbor Workers' Compensation Act "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." The Court thought it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help harbor workers, to distinguish between liability of owners to harbor workers in ship service injured under precisely the same circumstances because some draw their pay directly from the shipowner, who was incidentally also the harbor worker's employer, and other harbor workers who draw their pay directly from a stevedoring company or other third party doing the ship's service. Course's need for protection from unseaworthiness of the tug was neither more nor less than that of another ship-serving harbor worker employed by a stranger to the ownership of the tug.

I conclude that Course is not barred by the Harbor Workers' Act, § 905, supra, from relying upon Pinco's absolute and nondelegable duty and liability as the owner for the tug's unseaworthiness to support his libel, either in rem against the vessel, or in personam against the owner, Pinco, or both.

Accordingly, Course's complaint as a Jones Act action should be dismissed, with leave on his part to:

a) Within 15 days file an amended complaint, stating facts showing admiralty causes in this Court in conformity herewith; or

b) Proceed to discovery and attend pretrial conference November 30, 1964, at 10:00 A.M. on the issues of in personam liability of Pinco and damage in conformity herewith.

The Court's order in conformance with the above will follow.