Juan Enrique Olmo **SANTIAGO**,
Libelant,

v.

Nieves **HERMANOS**, Respondent.
No. 11-66.

United States District Court
D. Puerto Rico,
San Juan Division.
July 14, 1966.

Harvey B. Nachman, San Juan, P. R., for libelant.

Victor Gonzalez Mangual, San Juan, P. R., for respondent.

## ORDER

CANCIO, District Judge.

This is a suit in Admiralty by a longshoreman brought *in personam* against the owners of the motor vessel *Venus*. Libelant alleges that he suffered personal injuries in the port of San Juan while the vessel was being discharged.

He further alleges that his injuries were due to an unseaworthy condition of the vessel.

At the time of libelant's injuries; Nieves Hermanos was the owner of the M/V Venus. It was also the stevedoring employer of libelant and it had insured its employees in accordance with the Puerto Rico Workmen's Compensation Act. Libelant applied for and was awarded compensation by the Puerto Rico State Insurance Fund for his injuries.

Respondent moves to dismiss on the grounds that libelant has exercised his remedy to obtain and did obtain compensation from respondent as an insured employee under the Puerto Rican Act and under which law the remedy is exclusive. Fonseca v. Prann, (1st. Cir., 1960), 282 F.2d 153 cert. den. 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822; Flores v. Prann, D.C., 178 F.Supp. 845.

Libelant opposes on the grounds that the action is brought *in personam* and not *in rem*, solely because the vessel on which the occurrence took place has sunk and no lawful seizure thereof can be made. He further urges that the principles to be applied here are those of Reed v. The Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 and Hertel v. American Export Lines, Inc., (D.C. S.D.N.Y., 1964), 225 F.Supp. 703.

■ The development of the private internatonal law of the sea has a long history is the fact that the similar necessities of those plying the seas made for a fairly uniform development of the law. Nevertheless, the law of the sea was not operative until a nation adopted it as its own; and then, it was adopted with the amendments each country saw fit to impose. It was in this manner that the United States adopted the maritime law, subject to the modifications Congress and the Courts might from time to time see fit to make. The Lottawanna, 1874, 21 Wall. 558, 88 U.S. 558, 22 L.Ed. 654; The Western Maid, 1922, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299. Thus, the Constitution of the United States made

the general maritime law applicable to all of the United States. Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834; State of Washington v. W. C. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646.

We have not been able to find in the Constitution any basic principle which prevents Congress from granting to Puerto Rico, unilaterally or by compact, the power to legislate concerning its own waters. The question remains whether or not Congress has, in fact, surrendered to Rico this power.

Section 8 of the Puerto Rican Federal Relations Act, 64 Stat. 319, which continued in effect Section 8 of the Organic Act of 1917 (Jones Act), 39 Stat. 954, states, in part, as follows:

> That the harbor areas and navigable streams and bodies of water and submerged land underlying the same in and around the island of Porto Rico and the adjacent islands and waters, now owned by the United States and not reserved by the United States for public purposes, be, and the same are hereby, placed under the control of the government of Porto Rico, to be administered in the same manner and subject to the same limitations as the property enumerated in the preceding section: *Provided,* That all laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to said island and waters and to its adjacent islands and waters. * * *

The text of this law states essentially two principles:

(1) that the maritime laws and the rules of admiralty of the United States apply to the navigable waters in and around the Island of Puerto Rico and adjacent isles under its jurisdiction; and

■ (2) that the Commonwealth of Puerto Rico has the power to legislate in such a manner as to be incompatible

with the rules of Admiralty and the maritime law of the United States, wherein the latter will not be applicable to Puerto Rico. This, of course, does not mean that Puerto Rico could in this manner supplant a rule of maritime law which Congress in the exercise of its constitutional power under Article IV has expressly made applicable to Puerto Rican waters. Guerrido v. Alcoa Steamship Co., (1st Cir., 1956), 234 F.2d 349.

Therefore, we must assume, *juris tantum,* that the rules of Admiralty and the maritime law are applicable to Puerto Rican waters. We must, in order to overcome this presumption, determine whether any specific rule or law of these specifically has been made applicable by Congress to Puerto Rico; and, if not, whether there is any Puerto Rican legislation incompatible with the rules of Admiralty or the maritime law, so as to bar this action.

We have not been able to find anything in the rules of Admiralty or the maritime laws of the United States that makes them specifically applicable to Puerto Rico. Neither have we found anything that would make them inherently inapplicable. Thus, the problem is whether or not there is inconsistent legislation by the Commonwealth of Puerto Rico. Let us examine this question in the light of the facts of this case.

Libelant is a longshoreman who, at the time of the alleged incident, was engaged in work traditionally performed by seamen. He alleges that his injury was caused by an unseaworthy condition of the vessel. He libels the owners of the vessel *in personam* as she has sunk and he is thus impeded from proceeding *in rem*. Libelee was libelant's employer.

In Reed v. The Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, it was held "that petitioner was not barred by the Longshoremen's Act from relying on Pan-Atlantic's liability as a shipowner for the *Yaka's* unseaworthiness in order to support his libel *in rem* against the vessel."

The law of seaworthiness makes a shipowner the warrantor of seamen and longshoremen working aboard his ship. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. There, it was held that the Longshoremen's and Harbor Worker's Act was not intended to take away from longshoremen the traditional remedies of the sea, so that recovery for unseaworthiness could be had notwithstanding the availability of compensation.

33 U.S.C.A. 905 states that—The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband of wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, in such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

In *Yaka*, the injured longshoreman was the employee of a stevedore who was also the bareboat charterer of the vessel and, therefore, her owner *pro hac vice*. And, again, it was said that "only blind adherence to the superficial meaning of a statute could prompt" the Court to ignore the fact that the stevedoring contractor was "not only an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it should not be permitted to avoid." 373 U.S. 415, 83 S.Ct. 1353.

After having determined what the maritime law applicable to this case would be, we now turn to the question of whether or not there is Puerto Rican legislation on this subject, and whether or not this legislation makes the mari-

time law, as expounded above, inapplicable.

There is such a law: the Workmen's Accident Compensation Act of 1935, 11 L.P.R.A. sects. 1 et seq. Article 20 of this law, 11 L.P.R.A. 21, makes the remedies granted under it, exclusive *as against the employer.* In its own terms:

> When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to, or disease or death of, the workmen or employees not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be, the same as if this chapter did not exist.

Nevertheless, where a third party is liable to the workman, the workman is not impeded from recovering from the third party.

> 11 L.P.R.A. 32—In cases where the injury, the occupational disease, or the death, entitling the workman or employee, or his beneficiaries, to compensation in accordance with this chapter, has been caused under circumstances making third parties liable for such injury, disease or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third party liable for said injury, disease, or death, within one year following the date when becomes final the decision of the case by the Manager of the State Insurance Fund, who may subrogate himself in the rights of the workman or employee or his beneficiaries to institute the same action in the following manner. * * *

■ A workman or employee of an insured employer who, while in the course of his employment, suffers an injury on account of the fault or negligence of a third person, has two remedies: (1) to sue the latter for damages and (2) to resort to the benefits of the Workmen's Compensation Act praying for compensation from the State Insurance Fund. Flores v. Prann, (D.C.P.R., 1959), 175 F.Supp. 140; Del Río v. García, 1950, 71 P.R.R. 86; Del Río v. García, 1949, 70 P.R.R. 378; Cordero Mgr. v. American Railroad Co., 1946, 66 P.R.R. 438; Machado v. The American R.R. Co. of Puerto Rico, 1936, 49 P.R.R. 823.

■ The fact that a person injured in an accident has received compensation under the Workmen's Compensation Act does not prevent him from bringing an action for damages against the third party responsible for the injuries. Waterman Steamship Corp. v. Rodríguez, (1st Cir., 1961), 290 F.2d 175; Sanabria v. White Star Bus Line Inc., 1936, 50 P.R.R. 722.

■ In the case at bar, libelant is a longshoreman employed to do the work of a seaman by a stevedoring company, who is also the owner of the vessel. Thus, the employer and the third party responsible are one and the same person. Hence, it is alleged that the remedies under the Workmen's Compensation Act are exclusive and the maritime law is, therefore, inapplicable.

We could get around this problem by distinguishing between the respondent as stevedoring contractor (employer) and respondent as shipowner (third party responsible). This would be neither fair nor wise. Paraphrasing the Supreme Court in *Yaka,* we think it would produce a harsh and incongruous result, one out of keeping with the Legislature's intent to protect workmen, to distinguish between liability to longshoremen injured under precisely the same circumstances, because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service. The protection from unseaworthiness required by the one is neither more nor less than that required by the other.

Hence, we must come to the conclusion that as far as the matters herein are concerned, the laws of Puerto Rico are not in conflict with the rules of Admiralty and the general maritime law

**936**

and that, therefore, they are applicable to the questions at bar.

██ As to the question of whether this action can be brought *in personam*, liability for unseaworthiness lies with the shipowner *pro hac vice* or otherwise, and this responsibility is non-delegable. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. Hence, the shipowner may be libeled directly through a libel *in personam* or indirectly through a libel *in rem*. In this case, the remedies are alternative. Hertel v. American Export Lines, Inc., (D.C.S.D.N.Y., 1964), 225 F.Supp. 703; The Slingsby, (D.C. N.Y., 1902), 116 F. 227 affd. 2 Cir., 120 F. 748, cert. den. 188 U.S. 741, 23 S.Ct. 849, 47 L.Ed. 678.

In view of the foregoing, it is ordered, adjudged and decreed that respondent's motion to dismiss be, and hereby is, denied.