William E. WHITE

v.

**UNITED STATES LINES COMPANY, a**
body corporate (two cases).

**Nos. 4770, 4771.**

United States District Court
D. Maryland.

Dec. 10, 1965.

I. Duke Avnet and Sidney Goldscheider, Baltimore, Md., for libellant.

Randall C. Coleman, of Ober, Williams & Grimes, Baltimore, Md., for respondent.

NORTHROP, District Judge.

On December 18, 1964, William E. White, a longshoreman, instituted two suits in admiralty against the United States Lines Company (his employer), which was also the owner of the two vessels involved in the suits. Allegedly, the injury of which Libellant complained in Admiralty No. 4770 occurred on January 6, 1960, and involved a defective padeye; the injury in Admiralty No. 4771 occurred on November 4, 1960, and involved an improperly-secured cluster light. Each accident occurred in Baltimore and resulted, he claims, from the unseaworthy condition of the respective vessels.

From the face of the libels, one alleged injury occurred nearly five years before suit was filed; the other occurred more than four years before suit was filed. Respondent, United States Lines, has excepted to each libel on the ground that the claims are barred by laches. Having considered the testimony of the witnesses at the hearing on November 5, 1965, as well as the arguments of counsel and the relevant authorities, this court concludes that Respondent's exceptions to the amended libels in each case must be sustained, and the libels must be dismissed.

 In actions such as these there is no statute of limitations; rather, the doctrine of laches is used to determine whether the claim is timely. As a general rule, the admiralty court accepts the period of the corresponding state statute of limitations as a guide in determining whether the claim comes too late, although a mechanical application of the state statute is not permitted. That period in Maryland is three years. Ann. Code of Md. art. 57, § 1 (1957 ed., 1964 replacement volume).

[3] When a suit is filed after the analogous statute has run, a presumption arises that the delay has been without excuse and that the respondent has been prejudiced by that delay. The longer the delay, the stronger the presumption. See Vega v. The Malula, 291 F.2d 415 (5th Cir. 1961); Annot., 91 A.L.R.2d

1417 (1963), and cases collected therein. Of course, the absence of prejudice or an excuse for the delay may be shown by the libellant. See McMahon v. Pan American World Airways, Inc., 297 F.2d 268 (5th Cir. 1962); Vega v. The Malula, supra; Morales v. Moore-McCormack Lines, Inc., 208 F.2d 218 (5th Cir. 1953).

 Regardless of presumptions and the placing of the burden of proof, the testimony at this hearing clearly established that there was no excuse for Libellant's delay and that Respondent has been prejudiced by that delay.

## I. Delay

 In his affidavit supporting his answer to Respondent's exceptions, the Libellant claims that one reason for the delay is that his symptoms have become "more acute recently". This does not excuse his delay. Cf. Morales v. Moore-McCormack Lines, Inc., 109 F.Supp. 585, 587 (S.D.Tex.), aff'd, 208 F.2d 218 (5th Cir. 1953), where the court stated:

"If libellants as they say 'began to feel ill' during the Spring and Summer of 1952, it was negligence for them to wait, and they were guilty of laches in waiting, until the 'fall of 1952' to consult their 'private physicians' and until October 31, 1952, to file this suit."

The delay here was much longer than in Morales. Further, at the hearing, Libellant indicated that his injuries began to bother him soon after the accidents. At no time, while on the stand, did he state that the symptoms appeared only shortly before filing suit. By his own testimony, the injuries (particularly his headaches) have bothered him for at least a few years.

 Libellant also attempts to justify his delay by stating that since he was still employed by the same employer he did not wish to bring suit "unless he were compelled to do so because it might jeopardize his job and his security". This most certainly does not justify the four- and five-year delays respectively. Cf. Thorn Wire Hedge Co. v. Washburn

& Moen Mfg. Co., 159 U.S. 423, 444, 16 S.Ct. 94, 102, 40 L.Ed. 205 (1895):

> "It is said that complainant * * * feared that litigation to recover its demands would impair its receipt of future royalties * * *. The complainant's excuse, in this instance, that it preferred for prudential reasons * * [not] to assert its existing demands, is entitled to a less favorable consideration by a court of equity than if its conduct had been that of mere inaction."

■ Finally, Libellant argues that prior to May of 1963, when Reed v. S.S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), was decided, he did not have the right to sue his employer, and that his delay is therefore justified. This contention was rejected in Akers v. State Marine Lines, Inc., 344 F.2d 217 (5th Cir. 1965), and likewise is rejected by this court. Further, even if a delay until the time of that decision would have been justified, the fact remains that White waited until one year and seven months after the Reed v. S.S. Yaka decision to institute these actions.

Considering all of the testimony, this court finds that there was no reasonable excuse for the lengthy delay in bringing these suits.

## II. Prejudice

■ In view of the length of time that has elapsed and the absence of any excuse for the delay, prejudice might be presumed in this case. However, the testimony at the hearing establishes that there has been actual prejudice to the Respondent because of this delay.

A. In the intervening years United States Lines has disposed of the vessels in question, thus increasing the difficulties of making a complete investigation.

B. Section 5 of the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C.A. § 905, provides that

> "The liability of an employer [for the compensation] prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee * * * at law or in admiralty on account of such injury or death * * *."

Prior to Reed v. S.S. Yaka, supra, this section meant what it said. Reed, however, allowed a longshoreman to maintain an action in admiralty against his employer (who was also the bareboat charterer—analogous to an owner).

Although it was not until the Supreme Court's decision in Reed that Libellant could maintain this action against Respondent, it likewise was not until Reed that Respondent had reason to treat the events surrounding an injury such as White's as anything but a compensation case. Thus, Respondent, prior to Reed, would have had no reason to make an extensive investigation, interview all witnesses, or take other steps it would have taken had an action stemming from unseaworthiness been in contemplation.

C. This case is unlike Vega v. The Malula, supra, where the court found no prejudice because the accident was an obvious case of unseaworthiness; the failure to investigate there was not due to Libellant's delay but to Respondent's poor judgment in not investigating an obvious unseaworthiness case. At the time of White's injuries, however, the accidents appeared to constitute typical compensation cases and there was no reason for Respondent to undertake an investigation with a view toward a possible suit for unseaworthiness. Libellant's delay only encouraged Respondent to continue in this belief.

D. The testimony indicated that compensation cases and suits against the vessel owner stemming from unseaworthiness were treated by United States Lines under different procedures. Separate insurance carriers covered the losses from the different types of accidents; outside counsel was generally not obtained for the routine compensation cases, whereas the unseaworthiness cases were immediately referred to counsel for the insurance carrier. Further, and understandably, the New York office of the United States Lines was not notified of routine compensation cases.

Had White given some notification to United States Lines that he intended to treat his injuries as other than a normal compensation case, Respondent might well have undertaken an investigation of all facts surrounding the alleged accidents and injuries. As it was, the first notice United States Lines had was when suit was filed. The New York office was not made aware of the claims until December 28, 1964. Thus, the first attempts to ascertain the identity and location of witnesses could not be made until four or five years after the respective accidents.

Of course, Respondent changed certain of its internal operating procedures after the decision in *Reed*. Had White then seen fit to give timely notice, United States Lines might have attempted to apply those new procedures to injuries having occurred prior to *Reed*. Lacking such notice, United States Lines was entirely justified in not making a comprehensive examination of all of its files to determine which pre-*Reed* injuries merited further investigation.

Finally, although the court feels that there has been actual prejudice caused by the unreasonable delay, note must be made of the severe problems, both to the courts and vessel owners who are also employers of longshoremen, if a longshoreman is allowed to sue his employer for a pre-*Reed* injury. There is no way to determine how many suits there might be. Certainly the Respondent should not be expected to search all of its files at this date to determine how many pre-*Reed* compensation cases might also present unseaworthiness cases, and to then prepare defenses for these cases even though suit has not yet been filed. Indeed, the undertaking of such an investigation is likely to encourage the filing of suits previously thought barred.

This court finds that the above factors have made any defense by United States Lines much more difficult, if not nearly impossible. The scanty records of events surrounding the alleged accidents resulted from justifiable procedures at the time of the accidents. Respondent's failure to treat these cases as patent unseaworthiness cases was entirely proper, and the sole reason for its failure to treat the cases otherwise was White's failure to notify United States Lines within a reasonable time of either the accidents or *Reed* that he intended to sue.

It is, therefore, this tenth day of December, 1965, ordered that the exceptions to the libels in Admiralty No. 4770 and Admiralty No. 4771 be sustained and that the libels be dismissed.