202 So.2d 694 (1967)
Paul E. PERRY
v.
BALTIMORE CONTRACTORS, INC., et al.
No. 7051.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
Rehearing Denied October 4, 1967.
*695 Carl J. Schumacher, Jr., of Lemle & Kelleher, New Orleans, for appellant.
Margot Mazeau, of Normann & Normann, New Orleans, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
REID, Judge.
This is a suit for injuries allegedly sustained by plaintiff, Paul E. Perry, a diver employed by Underwater Exploration, Inc. The defendants are Baltimore Contractors, Inc., New Amsterdam Casualty Company, its insurer, and Ray Ledet, one of its employees.
Plaintiff's petition alleges that on or about October 13, 1958, he was employed by the Underwater Exploration Company, Inc. as a diver, diving for the company in the Intracoastal Canal in Houma, Terrebonne Parish, Louisiana, at the intended site of the tunnel to be built under the Intracoastal Canal. He alleges that while he was beneath the water, an employee of Baltimore Contractors, Inc. who was operating a crane on a barge owned by defendant Baltimore Contractors, Inc., scooped plaintiff up from the bottom of the Canal by a clam shell bucket and raised him approximately 14 feet above water level and after a short time, dropped him back into the water. Plaintiff prays for $20,000.00 for pain, suffering and anguish, $281.63 medical expenses, and $100,000.00 for future pain and suffering, medical expenses, and future loss of wages.
Baltimore Contractors, Inc. and New Amsterdam Casualty Company filed an exception of no cause or right of action on the grounds that plaintiff was an employee of Underwater Exploration Company, Inc., a subcontractor of Baltimore Contractors, Inc. and that he was injured as a result of the negligence of Ray Ledet, an employee of Baltimore and therefore the sole liability of Baltimore, if any, to the plaintiff is under the provisions of the Louisiana Workmen's Compensation Act, particularly R.S. 23:1061 et seq.
Plaintiff amended his petition to further allege alternatively that in the event the Court found petitioner was at the time of the accident an employee of Baltimore Contractors, Inc., that he was entitled to compensation under the laws of the Louisiana Workmen's Compensation Statutes.
Baltimore Contractors, Inc. and New Amsterdam Casualty Company then filed an exception of vagueness on the grounds that plaintiff's supplemental petition alleged he was "gainfully employed", but failed to allege the name of his employer.
*696 All of the exceptions were tried and the exception of vagueness was overruled and the exception of no right and no cause of action was referred to the merits.
The two corporate defendants then filed answers to plaintiff's original petition and supplemental petition admitting the New Amsterdam Casualty Company comprehensive general liability insurance in favor of Baltimore Contractors, Inc. but denied that Ray Ledet was an insured within the coverage provisions of the policy. They allege negligence on the part of plaintiff and alternatively that the sole and exclusive cause of the accident was the negligence of one Brian, Picou, plaintiff's tender, an employee of plaintiff acting in the course and scope of his employment.
Plaintiff filed a second supplemental and amended petition alleging that the accident in question occurred on the navigable waters of the State of Louisiana and of the United States, and the action is brought against the defendants as third parties under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., and in the alternative prayed that he be adjudged a seaman and have judgment against the defendants in the sum of $127,141.63, plus maintenance and cure, with legal interest and costs, all of which was denied by Baltimore Contractors and New Amsterdam Casualty Company in their answer.
Baltimore Contractors, Inc. and New Amsterdam Casualty Company then filed a third party action against Underwater Exploration Company, Inc. and its president, Paul E. Perry, averring that if plaintiff Paul E. Perry is entitled to any relief against Baltimore Contractors, Inc. and New Amsterdam Casualty Company, such relief is under the Louisiana Workmen's Compensation Act and therefore under the provisions of R.S. 23:1063, Baltimore Contractors, Inc. as principal contractor, and New Amsterdam Casualty Company as insurer, are entitled to indemnity from Underwater Exploration Company, Inc., a subcontractor of Baltimore Contractors, Inc., and employer of plaintiff, for any compensation benefits Baltimore and New Amsterdam might be called on to pay. They further aver that since Paul E. Perry was the President and sole shareholder of Underwater Exploration Company, Inc. and as such, personally responsible for the obligation of Underwater Exploration Company, Inc. to obtain workmen's compensation and general liability insurance covering the company's liabilities, that if third party plaintiffs are unable to effect indemnity from Underwater Exploration Company, Inc., they should be entitled to recover judgment of indemnity from Paul E. Perry. Paul E. Perry filed an exception of vagueness and of no cause or right of action to the third party petition, which exception was referred to the merits.
For written reasons assigned, the Lower Court rendered judgment in favor of plaintiff and against Baltimore Contractors, Inc. and New Amsterdam Casualty Company, jointly and in solido in the sum of $44,092.55, with interest and costs, from which judgment the said two defendants appealed.
In regard to the facts concerning the accident, the trial judge in his reasons for judgment states the facts in great detail and accurately.
"The record shows that Baltimore Contractors, Inc. was the general contractor engaged in the construction of the Houma Tunnel under the Intracoastal Canal at Houma; that a necessary incident of the operation was the use of a coffer dam constructed of sheet piling supported by wooden crossbeams, like a metal box with no top and bottom; that the purpose of a cofferdam was to facilitate work inside of it on the former bed of the Intracoastal to prepare the floor and walls of a tunnel; that the cofferdam was completely enclosed on all sides; that it was divided into bays, roughly rectangular in shape, each estimated to measure from 12 to 15 feet *697 in width and from 30 to 40 feet in length; that the respective bays were separated from one another only by crossbeams; and that the divers moved from one bay to another by moving through the crossbeams without emerging from the water.
"Plaintiff was a diver and an employee of Underwater Exploration Company, Inc., of which he was the President and principal stockholder, and which had an oral contract with Baltimore to perform the diving operations for the construction of the project; that the work of the diver consisted primarily of `hand jetting' mud from the side of the cofferdam, which was picked up along with mud from the bottom of the coffer dam by a clam bucket attached to a crane on a barge named `Whirly II', which was owned by Baltimore and was afloat on the Intracoastal Canal immediately outside of the coffer dam; that the air compressor unit attached to plaintiff's diving apparatus was attached to the barge and under the control of Byron Picou, plaintiff's tender in his diving operation; and that the entire operation was under the supervision and direction of Miles Spinney, a superintendent of Baltimore.
"Underwater, through Perry, contracted with Baltimore on or about October 9, 1959, to perform the necessary diving operations. When the contract was entered into Perry or Underwater applied for insurance and workmen's compensation and tendered a deposit for that purpose. It developed that the insurance applied for only became effective on October 15, 1959. Meanwhile, Perry went to work under his contract before producing any policies, and it was stated by Spinney that Baltimore had sufficient insurance to cover operations until the policies were delivered. The accident occurred on October 13, 1959.
"It is established with reasonable certainty that the general practice was that no digging operations would be performed while a diver was in the water; and such was the general knowledge and understanding on this particular operation. It was the practice generally, and the practice in this case, for a diver to move from one bay to another in the performance of his duties, and such movement from one bay to another usually took place under water and was not apparent on the surface of the water; and such movement could hardly be known to any one on or above the surface except the driver's tender, who would release or take in lines attached to the diver in accordance with the diver's movements.
"In this case it was known to everybody, with the possibly exception of Miles Spinney, that the diver had descended into the water; and it is the testimony of plaintiff that he descended at about 1:00 P.M. on the instructions of Spinney. The testimony indicates that he went into bay No. 6 and that thereafter he moved into bay No. 4. Meanwhile, a new crane operator took over that part of the job, and practiced for awhile the movement of the crane and the operation of the clam bucket. He was then given instructions to begin digging. He did so and removed a bucket of dirt from bay No. 4 and deposited it on the barge. Before dropping the bucket a second time, his testimony is that, being aware of the presence of a diver in the water, he attempted to signal that information to Spinney, who nevertheless signaled him to dig. He undertook to do so and on his second operation picked up Perry with his bucket, thereby causing injuries."
Examination of the facts in this case clearly shows that the trial Judge was correct in his findings.
We would like to point out that there is some dispute in the facts as to the question of insurance. The testimony of the plaintiff was to the effect that Miles *698 Spinney, Superintendent for the defendant, Baltimore Contractors, Inc., had entered into an oral agreement with plaintiff's corporation and, as stated in the testimony by the plaintiff, Spinney said that Underwater Exploration Company, Inc. would be covered by Baltimore's workmen's compensation and general liability insurance policy. It is admitted by the defendants in their brief that the oral contract between the parties "expressed the intention of the parties to get the work done without any repetition of a series of delays caused by early failures of other divers." The record shows that insurance coverage for Underwater went into effect on October 15, 1959, subsequent to the accident. Although the trial Judge indicates in his reasons for judgment that it was stated by Spinney that the boy bought sufficient insurance to cover operations, this was a statement by the plaintiff. It should be pointed out that the defendants' brief makes mention of a deposition by Spinney, and the minute entry shows that on March 18, the last day of the trial of the case, the court was informed that one witness for the defendants, namely, the said Miles Spinney, was absent, in the state of Maryland, and his testimony would have to be taken by deposition. The matter was then held open for the taking of the deposition and the right was reserved to counsel for the defendants for rebuttal on the said testimony by deposition. There is nothing in the records, however, which indicates that the deposition was taken or was filed in the record, despite the fact that the defendants' brief cites the deposition of Spinney in several places. In view of the fact that this deposition is not in the record that came before this Court and does not appear anywhere in the index of the record, and was apparently not filed, this Court has no alternative but to ignore the reference to the deposition of Spinney, and, in view of the uncontradicted testimony of the plaintiff in the record, we must accept as correct the trial Court's opinion in this regard that the plaintiff went to work with the consent and knowledge of the defendant prior to his producing evidence of insurance. We might point out that the record in its entirety shows that in all probability this was the case.
We feel that it is important to quote the following from the trial Judge's holdings due to the fact that there is a question as to the interpretation to be placed on the trial Judge's written reasons for judgment.
"We have reviewed numerous State and Federal cases, and particularly Federal cases covering all of the several phases of Maritime Law. We can find no profit in analyzing in detail here any of the holdings in said cases or the distinctions they draw. We believe it to be sufficient to hold the case of Calbeck v. Travelers Insurance Company, 370 U.S. 114, 82 S. Ct. 1196 [8 L.Ed.2d 368] (1962), is applicable to the facts of this case, as we have found them hereinabove. That case holds that Longshoremen's and Harbor Worker's Compensation Act, Section 3(a), 33 U.S.C.A., Section 903(a), is applicable here; and that "There emerges from the complete legislative history a congressional desire for a statute which would provide federal compensation for all injuries to employees on navigable waters;The statute's framers adopted this scheme in the Act because they meant to assure the existence of a compensation remedy for every such injury, without leaving employees at the mercy of the uncertainty, expense, and delay of fighting out in litigation whether their particular cases fell within or without state acts under the `local concern' doctrine." ([82 S.Ct.] Page 1200) "Congress brought under the coverage of the Act all such injuries whether or not a particular one was also within the constitutional reach of a state workmen's compensation law." ([82 S.Ct.] Page 1203) "In the application of the act, therefore, the broadest ground it permits should be taken." ([82 S.Ct.] Page 1205.)"
*699 The defendants set forth five specifications of error as follows:
"I. The trial court erred in failing to apply the governing law, the Louisiana Workmen's Compensation statute, R.S. 23:1061 et seq.
II. The trial court erred, having determined that the Longshoremen and Harbor Worker's Compensation Act applied, in allowing a tort recovery of $44,092.55, when the plaintiff's only remedy was Longshoremen and Harbor Worker's Compensation Act benefits.
III. The trial court erred, having determined that the Longshoremen and Harbor Worker's Compensation Act applied, in failing to dismiss the suit.
IV. The trial court erred in awarding the plaintiff, a diver hospitalized for only two days, the excessive sum of $44,092.55.
V. The trial court erred in not ordering indemnification of the general contractor by the subcontractor."
Before discussing the first specification of error, we would like to point out that the defendants' brief indicates that the trial Judge's ruling that the Longshoremen's and Harbor Workers' Compensation Act applied to this case, had the effect of holding that the State Court was divested of all jurisdiction since the adjudication of a claim under the Longshoremen's Act must be handled solely by the administrative agency set up under the Act. This is, of course, without merit, and what the trial Judge intended, as is clear from his opinion, was that it was the plaintiff's contention that an accident arose out of Maritime tort and that, therefore, the Longshoremen's Act rather than the Louisiana Workmen's Compensation Act applied in determining any right which plaintiff might have against the third party. As pointed out in defendant's brief, the trial Judge is well aware of this fact, having referred to the defendants as third parties and having rendered a judgment in damages.
Defendants' first contention is that only the Louisiana Workmen's Compensation Act applies and that the third party remedy under the Longshoremen's & Harbor Workers' Act does not apply. The trial Judge held that under the case of Calbeck v. Travelers Insurance Company, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), the Plaintiff was entitled to recover again under the provisions of this Act, and that under this case, the Louisiana Workmen's Compensation Act was not the exclusive remedy, but that the plaintiff fell within the scope of the Longshoremen's & Harbor Workers' Compensation Act. The defendants' brief concedes that Calbeck is a departure from the prior jurisprudence stating that the prior jurisprudence was to the effect that a Maritime worker injured in an accident occurring upon navigable waters and whose duties were maritime, but primarily local, was barred from the Longshoremen's Act and had to sue under local system of state workmen's compensation. There is no question but the Calbeck case is a departure and, as stated by the defendants, abolishes to a great extent much of the jurisprudence that had grown up under the so-called "Twilight Zone" doctrine.
It should be pointed out that in cases such as this, there is a general proposition, as set forth in the case of Matherne v. Superior Oil Company, 207 F. Supp. 591 (E.D.La.1962), that "Whether the Louisiana statute is exclusive for compensation purposes is immaterial so long as maritime jurisdiction is properly invoked".
Title 46, Sections 740, the U.S.Code (Admiralty Extension Act) provides as follows:
"The admiralty and maritime jurisdiction in the United States shall extend to and include all cases of damage or injury, *700 to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land * * *."
The plaintiff contends, of course, that the Whirly II was a vessel within the contemplation of the maritime law and with this opinion, we are in agreement. There is no question, as mentioned above, that as a result of Calbeck v. Travelers Insurance Company, supra, the Longshoremen's Act is intended to be co-extensive with federal maritime and admiralty jurisdiction.
"* * * It is sufficient to say that Congress intended the compensation act to have a coverage co-extensive with the limits of its authority and that the provision `if recovery * * * may not validly be provided by State law' was placed in the act not as a relinquishment of any part of the field which Congress could validly occupy but only to save the act from judicial condemnation, by making it clear that it did not intend to legislate beyond its constitutional powers. * * * In the application of the act, therefore, the broadest ground it permits of should be taken." 82 S.Ct. at 1205. (Emphasis supplied)"
The distinction between work of local concern and work under general maritime law has been completely abrogated by the case of Calbeck v. Travelers Insurance Company, supra, thus:
"There emerges from the complete legislative history a congressional desire for a Statute which would provide federal compensation for all injuries to employees on navigable waters; * * * The statute's framers adopted this scheme in the Act because they meant to assure the existence of a compensation remedy for every such injury, without leaving employees at the mercy of the uncertainty, expense, and delay of fighting out in litigation whether their particular cases fell within or without state acts under the `local concern' doctrine." (82 S.Ct. Page 1200) "Congress brought under the coverage of the Act all such injuries whether or not a particular one was also within the constitutional reach of a state workmen's compensation law." 82 S.Ct. at 1203
Although the defendants mention that the Calbeck case reads out of the act the necessity for sole coverage by the Longshoremen's Act and abolishes to a great extent the "Twilight Zone", the defendants contend the Calbeck case does not read out of the act a requirement of occurring upon navigable waters and quote Sec. 903 of the act to the effect that the injury must occur upon navigable waters and state that the plaintiffs in the Calbeck case were injured while completing construction of vessels which were afloat on the navigable waters and, thus were found to be within the coverage of the act. Defendants then contend that as Perry was working inside a cofferdam, an enclosed boxlike area, at the time of the accident, he was not working in navigable waters, and cite various cases to have held that a diver working in a cofferdam must recover under the State Workmen's Compensation Statute. Be that as it may, the barge upon which the clam bucket was dropped into the cofferdam, was clearly on navigable waters. It is the opinion of this Court, however, that the case of Guiterrez v. Waterman Steamship Corporation, 373 U. S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) makes it unimportant whether or not the water in the cofferdam should be or should not be decreed to be navigable waters. In that case, a longshoreman sued the vessel owner for injuries sustained on the dock and the court held as follows:
"Respondent contends that it is not liable, at least in admiralty, because the impact of its alleged lack of care or unseaworthiness was felt on the pier rather than aboard ship. Whatever validity this proposition may have had until 1948, the passage of the Extension of Admiralty Jurisdiction Act, 62 Stat. 496, 46 *701 U.S.C. & 740, swept it away when it made vessels on navigable water liable for damage or injury `notwithstanding that such damage or injury be done or consummated on land.' Respondent and the carrier amici curiae would have the statute limited to injuries actually caused by the physical agency of the vessel or a particular part of itsuch as when the ship rams a bridge or when its defective winch drops some cargo onto a longshoreman. * * * Nothing in the legislative history supports so restrictive an interpretation of the statutory language. There is no distinction in admiralty between torts committed by the ship itself and by the ship's personnel while operating it * * *." (Emphasis supplied). 83 S.Ct. at 1188.
We, therefore, do not see any merit in defendants' first allegation that the Louisiana Workmen's Compensation Act should apply, and not the Longshoremen's Act which we feel is applicable.
Defendant's second allegation of error is that assuming, which defendant is not, that the Louisiana Workmen's Compensation Act is not plaintiff's exclusive remedy and that the Longshoremen's & Harbor Workers' Act does apply, then his sole recovery is not an action for tort against the third person as found by the trial Judge, but rather for payment under the provisions of Longshoremen's & Harbor Workers' Act benefits and that, under the said act, the case should be transferred to a Deputy commissioner of the Department of Labor.
This contention of the plaintiff is based upon the provisions of Section 905 of Title 33 of the U.S. Code, the Longshoremen's & Harbor Workers' Act, which provides:
"The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death."
The defendants then contend that this section is applicable to Baltimore Contractors even though the plaintiff, Perry, was the employer of the Underwater Exploration, because of the language of Section 904, which reads as follows:
"(a). Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title. In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment."
Defendants further contend that as Baltimore Contractors secured payment for its Longshoremen's & Harbor Workers' Act liabilities by taking out its compensation insurance policy with defendant, New Amsterdam Casualty Company, and since Underwater Exploration had never taken out or provided for its Longshoremen's & Harbor Workers' Act coverage, Baltimore Contractors would only become liable under Section 904 of the Act to pay Perry's benefits and since it is liable under the act to pay these benefits whenever demanded, Baltimore Contractors can claim the exclusive liability provision of Section 905 of the Act; and that Section 905 states that such liability is exclusive and in place of all other liability except when the employer fails to secure payment for compensation; and that since the defendant, New Amsterdam Casualty Company, had a policy covering *702 Longshoremen's & Harbor Workers' Act benefits for Perry, it had the duty to pay the benefits when demanded and because of its legal duty, Baltimore Contractors and New Amsterdam can claim the tort immunity of Section 905; and therefore, the question before the Court is whether the general contractor who has covered the employees of the subcontractor will be able to claim the exclusiveness of liability provisions of Section 905.
The defendant then cites the case of Thomas v. George Hyman Construction Company, D.C., 173 F.Supp. 381 (1959), wherein Judge Holtzoff was the organ of the Court. However, in the Thomas case, the general contractor voluntarily took out workmen's compensation insurance on employees of the subcontractor even though the subcontractor had complied with the statute above cited and had taken out workmen's compensation. The court allowed plaintiff's suit for tort, holding that the employer would not be relieved from any action for negligence as a third party, merely by taking out Workmen's Compensation insurance. The language of the Court in that case is merely dictum and is permissive in view of the fact that the Court held therein as follows:
"* * * The law does not accord to the general contractor the choice of either carrying workmen's compensation insurance, or subjecting himself to liability for negligence. The law requires him to carry insurance only if the subcontractor fails to do so. In such a contingency, the general contractor may well be free of all of the liability if he in fact carried such insurance. * * *"
Therefore, the Thomas case cited by the defendants is not a point appropriate to the case at issue.
The plaintiff, in answering defendants' contention, states that if the plaintiff's employer, Underwater, had secured payment of compensation under the Act, plaintiff would have had two remedies:
(1) A claim against his employer for compensation benefits under the Act; and
(2) An action in law or in admiralty against Baltimore as a third party under Section 933 of the Act.
This is correct. The plaintiff then contends that since Underwater did not secure the payment of compensation, the plaintiff could, if he so chose, elect either to present a claim for compensation benefits against Baltimore under Section 904, or, as in all cases where the employer (in this case Underwater) failed to secure compensation, the employee has an absolute right to elect between a compensation and a tort remedy, and that Section 904 in no way restricted this election to actions against the employer only. Plaintiff further states that if this was not the proposition, the employee would be deprived of his action in tort against the third party merely by the fact that the third party carried Workmen's Compensation insurance on all of the employees of its subcontractors. The plaintiff then points out that, of course, the plaintiff could not recover twice from the contractor, once under the Act and in addition under tort.
It is the opinion of this Court that the reasoning of the plaintiff is by far the sounder and is more within the intent of the Act. There is nothing in the Act which can be construed to permit a third party to deprive an employee of his right of tort action against it merely by taking out Workmen's Compensation Insurance on the employees of its subcontractor.
It is therefore the opinion of this Court that the second allegation of error of the defendants is without merit.
Defendants' third allegation of error is if the case is a case upon which this court is called upon to pass questions on Longshoremen's & Harbor Workers' Act, that act, unlike the Jones Act, belongs properly to the Court of the federal system and that the state Court is without jurisdiction and *703 that the plaintiff cannot bring such a suit in the State Court.
At the time of the trial, and also at the time of the argument of this case, there was some question on this matter in view of the decision in the case of Jackson v. Lykes Brothers Steamship Company, La.App., 185 So.2d. 342 (4th Cir. 1966), affd. 249 La. 460, 187 So.2d 441 (1966). However, while the present case was being argued writs of certiorari had been granted to the U.S. Supreme Court and this matter has now been resolved by the decision of the U.S. Supreme Court in the case of Jackson v. Lykes Brothers Steamship Company, 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488, October Term, 1966, wherein on May 8, 1967, Justice Black as the organ of the Court reversed the judgment of the District Court and the Court of Appeal and remanded the case for trial and further proceedings in the Louisiana Court not inconsistent with its opinion. It is clear, in view of the Jackson case and in view of the case of Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, which was followed in the Jackson case and which the Fourth Circuit had attempted to distinguish in the Jackson case, that the Louisiana courts do have jurisdiction in this matter and that this question has now been resolved and we do not feel that it is necessary to go into detail regarding the hearing in the Jackson case. It is now clear that an action for tort under the Longshoremen's and Harbor Workers' Act would lie in the state court.
Before discussing the fourth specification of error, that is, the matter of quantum, we would like to make reference to the fifth specification which contends that Baltimore and New Amsterdam should be indemnified in the event they are assessed for damages. They base this on the fact that it is clear that if a principal contractor is cast in judgment in favor of an employee of a subcontractor, the principal contractor is entitled to indemnification from the subcontractor. Defendants maintain that the plaintiff was negligent in two aspects, that is, he was guilty of negligence which contributed to the accident and which we have already disposed of and also he was negligent in holding himself and his company out to be fully insured when in fact no insurance was in effect. Again, we have disposed of that fact in concluding that the trial Court was correct in its finding of fact that the plaintiff was working for the defendant with full knowledge by the defendant that the insurance which the plaintiff had sought was not in effect.
On the matter of quantum, we do not feel that the trial Judge's award of $44,092.55 is either excessive or insufficient and should, therefore, not be disturbed.
For the above and foregoing reasons the judgment of the trial Court is affirmed.
Affirmed.

ON APPLICATION FOR REHEARING
PER CURIAM.
Baltimore Contractors, Inc., and New Amsterdam Casualty Company have applied for a rehearing. They cite as error that portion of our original opinion which stated that the deposition of Miles Spinney was not included in the record and therefore the testimony contained therein could not be considered by us. They urge further that the omission of Spinney's deposition was an error on the part of the Clerk and that a rehearing should be granted and the deposition considered.
For the purpose of this per curiam, we have considered as true those portions of the deposition contained in defendant's brief. In essence, the deposition stands for the proposition that Perry held himself out as an employee of Underwater Exploration Company, Inc., when in truth and fact Underwater Exploration Company, Inc., was not in existence as a corporation at the *704 time of the contract. The net result thereof would make Perry an employee of Baltimore Contractors, Inc. Appellant contends that Perry cannot place a nonexistent corporation (Underwater Exploration Company, Inc.) between himself and the principal contractor (Baltimore Contractors, Inc.) so as to meet the holding in Reed v. S. S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed. 2d 448, which permitted an employee of a subcontractor to bring an action against the principal contractor for tort under the Longshoremen's and Harbor Workers' Compensation Act. Their further contention is that Perry, as the sole officer and stockholder of Underwater Exploration Company, Inc., assured Baltimore Contractors, Inc. that before the commencement of work, said Underwater Exploration Company, Inc. would have adequate insurance and that because of Underwater's failure to comply with this assurance, defendants are entitled to indemnification against Perry for this misrepresentation.
Accepting as true those portions of Spinney's deposition as set forth in appellant's brief, we must conclude that the same do not change or alter our original opinion. Under the holding in Jackson v. Lykes Brothers Steamship Company, Inc. decided May 8, 1967, the Supreme Court of the United States held that the Longshoremen's and Harbor Workers' Compensation Act is not an "exclusive remedy" of an injured marine employee and that the survivor of an employee may sue the employer in tort. It is therefore clear that Perry has a right of action directly against Baltimore Contractors, Inc. for a marine tort and his remedy is not limited to workmen's compensation. Further, Perry's failure to obtain insurance for Underwater Exploration Company, Inc. is not prejudicial to Baltimore Contractors, Inc. in the absence of a showing of negligence on the part of an employee of said Underwater Exploration Company, Inc.
For these reasons the application for rehearing is denied.