**Antoine SMITH, Plaintiff,**

v.

**STANDARD FRUIT AND STEAMSHIP COMPANY, Inc., Defendant.**

**66 Civ. 410.**

United States District Court,
S. D. New York.

Feb. 23, 1971.

Harry H. Lipsig, Jack Steinman, New York City, for plaintiff.

James Leonard, McHugh, Heckman, Smith & Leonard, New York City, for defendant.

## OPINION

SOLOMON, District Judge:

This case raises two issues:

1. Whether Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), should be extended to one who is neither the owner nor the bareboat charterer of a barge; and

2. Whether the lease arrangement here placed the lessee in a position legally equivalent to that of an owner or a bareboat charterer.

Plaintiff, a longshoreman, while performing work for his employer Standard Fruit and Steamship Company (Standard Fruit), slipped and fell on the deck of a carfloat barge leased to Standard Fruit by the New York Central Railroad Co. (N.Y. Central).

The barge was berthed on the north side of Pier 13 on the East River in Manhattan, a pier which Standard Fruit owned and operated. Standard Fruit kept the barge at Pier 13 when it unloaded ships. When Standard Fruit did not use the barge, N.Y. Central towed it to its docks in Weehawken, New Jersey, for either storage or repairs.

N.Y. Central towed the barge when it was to be moved. It also employed a one man crew to care for the below deck machinery. Standard Fruit controlled the barge only when its employees manually moved the barge along Pier 13.

Under the barge lease agreement, Standard Fruit was responsible for its equipment and for maintaining the deck. N.Y. Central was responsible for the rest of the barge; that is, the entire barge except for the deck area. N.Y. Central had the right to use the barge in its transfer and interchange service when Standard Fruit did not need it.

On the day of the accident, one of Standard Fruit's time chartered vessels, the M/S Brunsgard, arrived at the south side of Pier 13 with a cargo of bananas. Longshoremen were unloading the bananas from the side of the vessel by means of both permanent and portable conveyors which carried the bananas over the pier to a permanent conveyor installed on the deck of the barge. Smith was injured while loading bananas from the last permanent conveyor into freight cars on board the barge.

Since the accident Standard Fruit has paid Smith all compensation benefits due him under the Federal Longshoremen's & Harbor Workers' Compensation Act (Act).[1] 33 U.S.C. § 901 et seq.

Smith sued his employer Standard Fruit, basing his action on Reed v. The Yaka, *supra,* which held that the Act does not preclude a longshoreman's action against his employer who is also the bareboat charterer of the vessel which caused the injury. Standard Fruit denies liability, claiming the benefits of the exclusive remedy provisions of the Act. 33 U.S.C. § 905.

Standard Fruit moved for summary judgment. In a well-reasoned opinion, Smith v. Standard Fruit & Steamship Co., 277 F.Supp. 956 (S.D.N.Y.1967), Judge Croake reviewed the history and purposes of the Act and discussed Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and Reed v. The Yaka, *supra,* cases which have expanded the rights of longshoremen and the liability of shipowners. Judge Croake stated:

"In the present suit, then, if it can be shown that Standard Fruit was the owner of CARFLOAT #1 [the barge], it would be subject to suit even though it was also Smith's employer. * * *

" 'Ownership' as a legal concept has chameleonesque qualities, taking on shades of meaning according to the commercial-legal setting in which it appears. That in this instance ownership encompasses something more than 'legal title' is clear from the Supreme Court's discussion in Reed v. The Yaka, supra, at nn. 5–9, 373 U.S. pp. 412–413, 83 S.Ct. 1349. How much more and/or what kind more

---

I. Section 904, 33 U.S.C. provides:
*"Liability for compensation*
(a) Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title. * * *
(b) Compensation shall be payable irrespective of fault as a cause for the injury."
Section 905, 33 U.S.C. provides:
*"Exclusiveness of liability*
The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

are the questions facing the court in the present case. We must decide whether to fit the present relationship between Standard, New York Central, and CARFLOAT #1 into that category of 'ownership' which would render Standard subject to suit." 277 F. Supp. at 957.

Judge Croake held that the question of ownership should be decided so as to "best effectuate the policies of the [Act]" and that here this would require factual evidence "concerning the Act's purposes and the changing context in which those purposes are to be achieved." Smith v. Standard Fruit & Steamship Co., supra, 277 F.Supp. at p. 957. Judge Croake therefore denied the motion on the ground that Smith might be able to adduce evidence at trial which would show that Standard Fruit's relationship with N.Y. Central had the attributes of ownership.

Judge Croake also denied the motion because, under Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), rehearing denied, 374 U.S. 858, 83 S.Ct. 1863, 10 L. Ed.2d 1082 (1963), Smith might be able to show at trial that an unseaworthy condition attributable to the Brunsgard caused his injury. However, at trial Smith abandoned this contention, leaving only the question of ownership.

The parties tried the case on stipulated evidence, all of which concerned the relationship between Standard Fruit and N.Y. Central. The only testimony introduced was the transcript of one witness's testimony in a pending State court proceeding between Smith and N. Y. Central, in which Smith contends the barge was unseaworthy. The witness, a N.Y. Central employee, testified that N. Y. Central did not use the barge in its normal transfer and interchange service but that under the terms of the lease it was privileged to do it.

The new stipulations and testimony add nothing substantial to that which Judge Croake had before him. Smith has failed to show additional facts which would convert this lease arrangement into a relationship tantamount to ownership.

I have also concluded that the purposes of the Act would not be served by extending Reed v. The Yaka, *supra*, to include leases like this one. Defendant is entitled to a judgment of dismissal.

This opinion shall serve as findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).