Miguel LUGO, Plaintiff,

v.

TRANSUNION LEASING CORPORA-TION, a Delaware Corporation, Defendant.

Civ. A. No. 77–4.

United States District Court, D. Delaware.

Nov. 2, 1977.

Richard W. Pell of Tybout & Redfearn, P. A., Wilmington, Del., for plaintiff.

Ernest S. Wilson, Jr. of Wilson & Whittington, P. A., Wilmington, Del., for defendant.

LATCHUM, Chief Judge.

In this admiralty suit brought under the "Jones Act", 46 U.S.C. § 688, and the General Maritime Law of the United States, the plaintiff, Miguel Lugo, a resident of the Republic of Surinam, South America, seeks damages against the defendant Transunion Leasing Corporation, owner of the shrimp trawler "Olympic Champion", for personal injuries allegedly sustained while serving as a seaman aboard the trawler.[1] The complaint further alleges (a) that the plaintiff was injured on February 24, 1974, at Port of Paramaribo, Surinam, while employed by the defendant as a member of the crew assisting in loading cargo aboard the trawl-

er,[2] (b) that the defendant was the owner of the Olympic Champion that "operated, managed and controlled" the trawler and (c) that plaintiff at the time of injury was performing seaman's duties on the orders of the defendant through its officers and agents aboard the vessel.[3]

The defendant has answered, denied the material allegations of the complaint,[4] and has moved for summary judgment,[5] supported by an uncontroverted affidavit of Richard D. Ringe[6] and a true copy of an "Equipment Lease (Bareboat Charter)" dated May 18, 1973 entered into between the defendant and All Seas, Inc., a Florida corporation, for the lease and demise of the shrimp trawler, "Olympic Champion".[7]

The defendant contends that the Equipment Lease is a bareboat or demise charter which shifted the possession and control of the trawler from defendant to All Seas, Inc., making the latter the owner *pro hac vice* and responsible for any alleged damages sustained by the plaintiff.

■ A charter by whose terms the whole vessel is let to the charterer with a transfer to him of its entire command and possession and consequent control over its navigation amounts to a demise of the vessel or a bareboat charter, and the charterer is generally considered the owner for the service stipulated. *United States v. Shea,* 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403 (1894); *Leary v. United States,* 81 U.S. (14 Wall.) 607, 610, 20 L.Ed. 756 (1871). The important legal consequence of a demise or bareboat charter is that the demised charterer is viewed as the owner of the vessel *pro hac vice* who becomes responsible for all in personam liabilities arising out of the ship's operation during the demise, including the obligation of seaworthiness. *Reed v. The Yaka,* 373 U.S. 410, 415, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); Gilmore & Black, The Law of Admiralty (2 ed.) § 4–23, p. 242.

1. Docket Item 1, pars. 1–3, 4, 6–7, 9, 12.

2. *Id.* pars. 8–12.

3. *Id.* pars. 4–5, 11–12.

4. Docket Item 5.

5. Docket Item 7.

6. Docket Item 11.

7. *Id.,* Ex. A.

■ The uncontroverted facts[8] show: The demise of the Olympic Champion was entered into on May 18, 1973, some three months before the vessel was delivered by her builders, Master Marine, Inc., to the Lessee, All Seas, Inc., and apparently before the ship was even completed.[9] The demise expressly provided that all equipment on the vessel should be selected by the Lessee and that the Lessee had the sole duty of inspecting the equipment for defects[10] and any warranties by the Lessor of fitness of the vessel for any particular purpose was expressly disclaimed.[11] Moreover, the demise expressly provided for a warranty of seaworthiness running from the Lessee, All Seas, Inc., to the defendant, Lessor.[12] The Lessee also had the option to purchase the vessel for 15% of its original cost at the expiration of the term of the lease.[13]

More importantly, however, the lease provided that

". . . Lessee shall have exclusive possession, control and command of the Vessel, and shall man, victual and navigate the Vessel at its own expense or by its own procurement throughout the term hereof. The Master, officers and crew, if any, of the Vessel shall be engaged and employed by the Lessee or its agents and shall remain the servants of Lessee, navigating and working the Vessel on behalf of and at the risk of the Lessee."[14]

Under these uncontroverted circumstances, the defendant here has no liability to the plaintiff as a seaman on the vessel under the Jones Act or under any warranty of seaworthiness.

■ Plaintiff, however, seeks to invoke the owner's liability as the bare legal title holder of the vessel upon an owner's warranty of seaworthiness at the time of the charter. While this warranty has legal substance in the ordinary time or voyage charter of affreightment, it has no application to a demise charter which contains an express disclaimer of any warranties. *Cullen Fuel Co. Inc. v. W. E. Hedger, Inc.*, 290 U.S. 82, 88, 54 S.Ct. 10, 78 L.Ed. 189 (1933); *Work v. Leathers*, 97 U.S. 379, 24 L.Ed. 1012 (1878). The *Leathers* case describes the warranty of seaworthiness as "the implied contract where the contrary does not appear." The difficulty with plaintiff's argument here is that the contrary does appear in the demise under consideration. But even aside from this, the complaint does not allege or suggest that the vessel was unseaworthy at the time of its demise. *See Haskins v. Point Towing Co.*, 421 F.2d 532, 536 (C.A. 3, 1970).

Consequently, the Court having found that the defendant demised the Olympic Champion on a bareboat charter to All Seas, Inc., long prior to plaintiff's alleged injuries, an order will be entered granting defendant's motion for summary judgment.

---

8. Plaintiff has neither controverted the facts in the Ringe affidavit nor filed a Rule 56(f) affidavit stating why he could not present facts essential to justify his opposition to the present summary judgment motion. *Swettlen v. Wagoner Gas & Oil, Inc.*, 369 F.Supp. 893, 898 (W.D.Pa.1974).

