806 F.2d 49
 1987 A.M.C. 616
 George KARVELIS, Plaintiff-Appellee,
v.
CONSTELLATION LINES S.A., Entemar Shipping Co., S.A.,
Constellation Lines, Inc., and Constellation Navigation,
Inc., as agent for Constellation Lines S.A., Entemar
Shipping Co., S.A., and Constellation Navigation, Inc., Defendants.
Appeal of CONSTELLATION LINES S.A. and Entemar Shipping Co.,
S.A., Defendants- Appellants.
 No. 99, Docket 86-7418.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 17, 1986.
Decided Nov. 21, 1986.
 
 William M. Kimball, New York City (John J. Walsh, Freehill, Hogan & Mahar, New York City, of counsel), for defendants-appellants.
 Jethro M. Eisenstein, New York City (Harvey J. Kaufman, Paul K. Feldman, Meyers, Tersigni, Kaufman, Lurie, Feldman & Gray, Friedman & Eisenstein, New York City, of counsel), for plaintiff-appellee.
 Before OAKES, MINER and MAHONEY, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 The operator and owner of a Greek-flag vessel, Constellation Lines S.A. ("Constellation") and Entemar Shipping Co., S.A. ("Entemar") respectively, appeal a judgment after a jury verdict in favor of a Greek seaman, George Karvelis, who was injured while working aboard the vessel Constellation Enterprise. The United States District Court for the Southern District of New York, Robert L. Carter, Judge, entered judgment for $300,000 on Karvelis's claims of negligence under the Jones Act, 46 U.S.C. Sec. 688 (1982), and unseaworthiness under general maritime law. The jury expressly found Karvelis not contributorily negligent. Entemar and Constellation argue on appeal that the district court lacked subject matter jurisdiction, that the identity of any Jones Act employer of Karvelis was a jury question, that only the shipowner, Entemar, could be liable under general maritime law for unseaworthiness, that Judge Carter erroneously charged and failed to charge the jury in connection with contributory negligence, and that there must be a new trial if any of the defendants' directed verdict motions to dismiss the unseaworthiness and negligence claims for insufficient proof should have been granted. We affirm.
 
 
 2
 Applying the tests laid down by the Supreme Court in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the district court looked behind "the facade of the operation," Hellenic Lines, 398 U.S. at 310, 90 S.Ct. at 1734, toward "the actual operational contacts that this ship and this owner have with the United States," id., to hold that there was Jones Act jurisdiction. Karvelis v. Constellation Lines S.A., 608 F.Supp. 966, 971 (S.D.N.Y. 1985). For the reasons stated in Judge Carter's opinion, id. at 968-71, and on the facts set forth therein, we agree that there was subject matter jurisdiction under the Jones Act. While the appellants' brief does not make the suggestion, their oral argument was to the effect that with the changing composition of the United States Supreme Court since the decision in Hellenic Lines, that case and the "operational gloss" it put on the Lauritzen test, 398 U.S. at 308-10, 90 S.Ct. at 1733-34, would not now be credited by the Supreme Court. We decline the exercise. Appellants have pointed to no case, no commentaries, no statutes, and no authorities that would lead us to believe that the Supreme Court has overruled Hellenic Lines sub silentio or would do so were it given the opportunity. Cf. Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 760 F.2d 1347 (2d Cir.1985) (rejecting the argument that Keogh v. Chicago & Northwestern Railway, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), had been overruled), aff'd, --- U.S. ----, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986).
 
 
 3
 Constellation was found liable for negligence under the Jones Act and both Constellation and Entemar were found liable under the general maritime law. Appellants argue that the identity of Karvelis's employer for Jones Act purposes is a jury question and that it was error to charge that Constellation was the employer as a matter of law. Then appellants argue that only a ship's owner may be liable under general maritime law for unseaworthiness, that Entemar is the owner, and that Constellation should not have been held liable because it was merely the ship's nonowning operator. These arguments, side by side, plunge us into the Serbonian Bog, see J. Milton, Paradise Lost, Book II, line 592 (1667); Landress v. Phoenix Mutual Life Insurance Co., 291 U.S. 491, 499, 54 S.Ct. 461, 463, 78 L.Ed. 934 (1934), (Cardozo, J., dissenting); Diematic Manufacturing Corp. v. Packaging Industries, Inc., 516 F.2d 975, 978 (2d Cir.) (Mulligan, J.), cert. denied, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975), that is the law relating to a seaman's recovery for death and injury. We use this term advisedly, for the leading commentators refer in their treatise to the fact that "[t]he perils of the sea, which mariners suffer and shipowners insure against, have met their match in the perils of judicial review." G. Gilmore & C. Black, The Law of Admiralty Sec. 6-1, at 272 (2d ed. 1975). The title of another commentator's article bears this out. See Currie, Federalism and the Admiralty: "The Devil's Own Mess," 1960 Sup.Ct.Rev. 158. As Gilmore and Black point out,
 
 
 4
 The Jones Act count and the unseaworthiness count overlap completely: they derive from the same accident and look toward the same recovery. As a matter of jurisprudential elegance or even of common sense it would have been desirable (and would still be desirable) to abandon the cumbersome fiction that two causes of action are involved and to restate the seaman's cause of action for death or injury as being what it is. That has not been done and, in all probability, will never be done. After ten or fifteen years of confusion the admiralty lawyers and the admiralty judges came to understand that the Jones Act count and the unseaworthiness count are Siamese twins. The only danger here is the possibility that a non-admiralty lawyer will be retained to handle such a case or that a non-admiralty judge will be called on to decide one.
 
 
 5
 G. Gilmore & C. Black, supra, Sec. 6-38, at 383.
 
 
 6
 Presented with the "Siamese twins," we do nevertheless have to examine each one, for no election between the counts is required and the Supreme Court, at least in its last five-to-four vote on the issue, maintains that "the Court has repeatedly taken pains to point out that liability based upon unseaworthiness is wholly distinct from liability based upon negligence." Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971); see also Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960).
 
 
 7
 Considering first the Jones Act count, our court has held that only an employer can be liable under the Jones Act. Moncada v. Lemuria Shipping Corp., 491 F.2d 470, 473 (2d Cir.), cert. denied, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974); see also Mahramas v. American Export Isbrandtsen Lines, Inc., 475 F.2d 165, 170 (2d Cir.1973). But see G. Gilmore & C. Black, supra, Sec. 6-21(a), at 338-39 (recommending reconsideration of the assumption that the only possible Jones Act defendant is a single employer). We believe that Judge Carter did not err when he decided that Constellation was Karvelis's employer rather than put the question as to who was the employer to the jury. The facts that defendant's answer to plaintiff's Interrogatory 50 stated that Entemar was the employer and that the employment contract on Constellation's form identified Entemar as the shipowner (from which it might be implied that Entemar was the employer, see Fitzgerald v. A. L. Burbank & Co., 451 F.2d 670, 674 n. 2 (2d Cir.1971)) are irrelevant. Exhibit 1, Karvelis's employment contract, was on Constellation's form, as were his wage receipts. Constellation managed the ship and operated it, chartering the vessel. It paid for Karvelis's transportation from Greece to the United States to join the ship. In the circumstances, there was no sufficient evidence to go to the jury that Entemar, rather than Constellation, was the employer.
 
 
 8
 We turn next to appellants' argument that Constellation was not the owner and so could not be liable on the unseaworthiness count. There is language in the opinions that the obligation of seaworthiness is "peculiarly and exclusively the obligation of the owner [and] one he cannot delegate." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 100, 66 S.Ct. 872, 880, 90 L.Ed. 1099 (1946). But in Reed v. The Yaka, 373 U.S. 410, 412-13, 83 S.Ct. 1349, 1351-52, 10 L.Ed.2d 448 (1963), the Court held that a bareboat charterer, being in "full possession and control" of a vessel, may be treated as an owner, "generally called owner pro hac vice," and may be personally liable for the unseaworthiness of a chartered vessel. In this case, though Entemar was the record owner with title to the vessel, Constellation was much more than a mere time or voyage charterer. The district court held that Constellation also operated and managed the vessel at the time Karvelis sustained his injury. As operator, manager, and charterer, Constellation had such control and possession of the vessel as to be its owner pro hac vice. See id.; Eskine v. United Barge Co., 484 F.2d 1194, 1196 (5th Cir.1973). Hence, Constellation could properly be held liable on the unseaworthiness count.
 
 
 9
 The district court indicated in accordance with Fed.R.Civ.P. 51 that it would charge at least the substance of the defendant's contributory negligence requests 19, 20, 22, and 23, which read as set forth in the margin.[1] Appellants claim that it did not do so. We disagree. The court's charge, also set forth in the margin,[2] does so in substance.
 
 
 10
 Entemar and Constellation were represented at trial by the same counsel, William M. Kimball, Esquire. He moved on behalf of Entemar to dismiss any negligence or unseaworthiness claim against Entemar pertaining to the space underneath the cables on the starboard side of a winch, the cables on which served to raise and lower the "car deck" of the Constellation Enterprise, a so-called "roll on-roll off" vessel. The argument is that there was no notice to or negligence by Entemar because it did not know and could not reasonably have known that Karvelis would use that space as he did, trying to get out of the way of the deck, which he feared would fall because one of the cables was overriding. But the evidence was that Karvelis slipped and grabbed a moving cable and that his hand got stuck on the cable. According to expert testimony, his gloves apparently snagged on cable "fish hooks," pulling his hand into the block of the winch. Entemar, then, was not being held liable for negligence under the Jones Act but solely for unseaworthiness under the general maritime law and notice or negligence is therefore immaterial. Mitchell v. Trawler Racer, Inc., supra; see also G. Gilmore & C. Black, supra, Sec. 6-44(a), at 401-04. True, counsel did argue that there could be no unseaworthiness with respect to a "fish hook" because it was never intended that anybody grab the cable while it was being moved. However, Karvelis had been specifically assigned to the task of lubricating and adjusting the cables. He was given no instruction manuals or diagrams with respect to the equipment. The cables had to be adjusted to spool evenly and to do that the adjustment bolts had to be loosened and a safety device holding the end of the cable moved. Then Karvelis and his coworker were manually to pull wire from the safety apparatus so as to make cables of even length. Thus, there was evidence to show that it was indeed contemplated that Karvelis would handle the cable with his hands. While it may not have been contemplated that he would slip and grab a moving cable, the fact is that he did so. The evidence permitted the inference on the basis of the expert testimony that he must have snagged his glove on cable "fish hooks."
 
 
 11
 To the extent that a motion for a directed verdict was made as to Constellation on the negligence count, it would be immaterial since Constellation was also held liable on the unseaworthiness count. Even so, there was ample evidence of negligence in (a) Constellation's failure to give Karvelis appropriate instructions, diagrams or manuals with respect to the equipment and (b) the chief mate's operating the winches at a control position from which he was unable to see the winches. Though Karvelis was given a walkie-talkie, he received no communication from the chief mate when the cable started to pile on top of itself. It was because he was unable to contact the chief mate by walkie-talkie, and because he was afraid that the cable would part with tension with the possibly disastrous result of dropping the "car deck" on him, that Karvelis moved away from his position by the winch and moved under the cables. Expert testimony was given to the effect that it was "totally unacceptable" to have someone operating a winch without being able to see it. Proper practice called for stationing signalmen for a positive line of communication.
 
 
 12
 Finally, Karvelis argues that the costs incurred in preparing the supplemental appendix should be taxed to appellants. We agree. The original appendix filed in this action left out entirely Karvelis's response to the appellants' motion for summary judgment as well as significant excerpts from the testimony of several witnesses. This material, which was included in the supplemental appendix, was relevant and important in deciding this case. Therefore, we direct that the cost of the supplemental appendix be included among the taxable costs of this case pursuant to Fed.R.App.P. 30(b).
 
 
 13
 Judgment affirmed.
 
 
 14
 MAHONEY, Circuit Judge, concurring in the result.
 
 
 15
 I concur in the judgment reached by the majority, and differ only as to its determination that Constellation was properly held liable on the unseaworthiness count as owner pro hac vice.
 
 
 16
 The majority relies upon Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), where a bareboat charterer was deemed an owner pro hac vice and accordingly liable for unseaworthiness, and Eskine v. United Barge Company, 484 F.2d 1194 (5th Cir.1973), reaching the same result where "[t]he relationship was, or was analogous to, that existing under a bareboat charter." Id. at 1196. I do not believe that the relationship between Entemar and Constellation meets the requirements of Reed/Eskine for a finding that Constellation was the owner pro hac vice of the vessel Constellation Enterprise when Karvelis was injured.
 
 
 17
 Reed described the characteristics of a bareboat charter as follows.
 
 
 18
 Pan-Atlantic was operating the Yaka as demisee or bareboat charterer from Waterman. Under such arrangements full possession and control of the vessel are delivered up to the charterer for a period of time. The ship is then directed by its Master and manned by his crew; it makes his voyages and carries the cargo he chooses. Services performed on board the ship are primarily for his benefit. It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called owner pro hac vice.
 
 
 19
 373 U.S. at 412, 83 S.Ct. at 1351 (emphasis added) (footnotes omitted). See also Guzman v. Pichirilo, 369 U.S. 698, 699-700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962) ("To create a demise the owner of the vessel must completely and exclusively relinquish 'possession, command, and navigation' thereof to the demisee[,]" quoting United States v. Shea, 152 U.S. 178, 186, 14 S.Ct. 519, 521, 38 L.Ed. 403 (1894)).
 
 
 20
 In Eskine, the plaintiff was injured aboard a barge used by his employer, Cargill, for the delivery of salt. 484 F.2d at 1195. Cargill owned no barges. The evidence failed to establish the identity or ownership of the barge. Id. Nevertheless, the Fifth Circuit affirmed the district court's holding that Cargill was the barge's owner pro hac vice. It did so, however, only after noting that the barge was moved to and from Cargill's loading dock by a Cargill tugboat; it was made fast to the dock by Cargill employees; and it was within the exclusive control of Cargill while being loaded. Id. at 1196. Furthermore, "[u]nlike a vessel with motive power that is commanded by a master, vessels without motive power [such as the barge in Eskine ] are essentially subject to the control and direction of the tug that tows them." Keller v. United States, 557 F.Supp. 1218, 1228-29 (D.N.H. 1983).
 
 
 21
 Here, it appears that the vessel was owned by Entemar, and its crew and master were supplied by Entemar, which was held liable as owner for unseaworthiness. Constellation was the manager of the vessel, whose function was to find freight that the vessel could carry at a profit and see to it that the vessel was carrying such freight, and is also variously described in the record as its time charterer or charterer and operator. Especially since the court below instructed the jury that "every shipowner or operator" is liable for unseaworthiness, a standard that goes well beyond the rule established by Reed/Eskine, and did not include in its charge or verdict form any requirement that any Reed/Eskine standards had to be satisfied to hold Constellation liable for unseaworthiness, I do not believe that we should affirm as to Constellation's liability for unseaworthiness on this record.
 
 
 22
 Since Constellation was properly held liable under the Jones Act, however, I concur in the judgment of the majority.
 
 
 
 [1]
 19. If any negligence by plaintiff played any part, even the slightest, in causing his injury, then you must find that he was contributorily negligent
 
 
 [20]
 Contributory negligence has been defined as failure to use due care for one's own safety
 ....
 
 
 [22]
 Every person, plaintiff included, has a legal duty to make reasonable use of his own senses in order to avoid injury to himself, ... and failure to do so is contributory negligence as a matter of law
 
 
 [23]
 A crewman should exercise due care with respect to his work place and working methods and may not act in disregard of his own safety
 (Citations omitted.)
 
 
 [2]
 Negligence is the failure to use reasonable care and reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances or in failing to do something that a reasonably careful person would do under like circumstances
 ....
 The defendant contends that--I might as well say the defendants, because this issue of contributory negligence applies also to the seaworthiness claim.
 The defendants contend that the plaintiff himself was negligent and that such negligence was a legal cause for his own injury. This is a defensive claim and the burden of proving that claim by a preponderance of the evidence is upon the defendant who must establish, one, that the plaintiff was also negligent and, two, that such negligence was a proximate cause of the damage which the plaintiff sustained.
 If you find in favor of the defendants on this defense, that will not prevent recovery by the plaintiff. It only reduces the amount of the plaintiff's recovery. In other words, if you find that the accident was due partly to the fault of the plaintiff, that his own negligence was, for example, 10 percent responsible for his own damage, then you may or you would fill in that percentage as your finding on the special verdict form that I will explain to you shortly.
 If you find that the plaintiff was 20 percent responsible for his damage, then you will reduce the amount by 20 percent. If it is 30, so forth and so on.
 Your finding that the plaintiff was in part responsible will not prevent the plaintiff from recovering. You will merely reduce the plaintiff's total damages by the percentage that you insert.
 As I have indicated, I'm not suggesting, one, that you find that he was contributory [sic ] negligent or, two, what percentage, but this is the process that you go through. You may find he was 1 percent negligent or 99 percent or you may find he was not contributorily negligent at all.