**Vesela SANGO, as Executrix of the Estate of Rafael Sango and Vesela Sango, Individually, Plaintiff,**

v.

**SPLOSNA PLOVBA, James E. Curran & Company, Inc. and Does 1–5, Defendants.**

No. 94 Civ. 5946 SAS.

United States District Court, S.D. New York.

June 4, 1997.

**230**

Robert A Skoblar, Englewood, NJ, for Plaintiff.

Thomas H. Healey, New York City, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge:

Plaintiff Vesela Sango alleges that defendants' failure to provide adequate care for her seaman husband, Rafael Sango, who committed suicide at sea, constitutes negligence under the Jones Act, 46 U.S.C.App. § 688, and unseaworthiness under general maritime law. *See Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The parties agreed to a trial to the Court on a stipulated record. For the reasons discussed below, this case is dismissed for failure to state a valid claim.

## I.  FINDINGS OF FACT

On November 3, 1975, decedent Rafael Sango ("Sango") entered into an employment agreement with Defendant Splosna Plovba ("Plovba"), an international shipping company based in the neighboring cities of Piran and Portoroz on the Adriatic coast of Slovenia. He served regularly as a boatswain (a petty rigging officer) aboard Plovba's ships for nearly seventeen years, and was held in high esteem by his shipmates and the officers supervising him. *See* Joint Exhibits 1 and 2.[1] Mrs. Sango estimates that her husband visited the United States once each year in the course of his employment with Plovba. There is no further evidence in the record indicating the amount of business Plovba conducted in the United States. *See* Certification of Vesela Sango, December 29, 1995, ("Sango Cert.") ¶ 3.

Sango was married to Plaintiff Vesela Sango on December 19, 1970. The Sangos had four children, one of whom is still a dependant. *Id.* ¶ 2. Sango was at sea for approximately eight months of every year, and supported his family with a $21,600 salary from Plovba and an additional $6,000 earned from selling wine, fish and ham while home in Privlaka, Croatia. *Id.* ¶ 7.

Sango signed on to the M/V Novo Mesto as boatswain on March 16, 1992 in Guayaquil, Ecuador. *See* J.Ex. 1. The Novo Mesto was owned and operated by Plovba and flew the flag of St. Vincent and the Grenadines, an independent member state of the British Commonwealth. *See* Joint Pre–Trial Order at 2. The entire crew of the Novo Mesto were domiciliaries of what was then Yugoslavia. *See* J.Ex. 6.

On August 17, 1992, Sango called his wife from aboard the M/V Novo Mesto while at sea. Sango Cert. ¶ 4. He told her "very horrible things" were occurring on board the ship, that he could not elaborate, and that he was planning to leave the ship at the next port (Albany) and fly home. *Id.* Shortly thereafter, as the Novo Mesto navigated the Hudson River, the chief mate noticed that Sango "began to behave in a nervous manner and overreacting [sic] in certain ways":

> He was concerned about the cargo and that it be delivered in good condition. This was the cement cargo going to Burnside. At anchor outside Albany, New York before 9/7/92 he saw fishing vessels near the ship and told me he thought they were undercover Coast Guard boats trying to catch the vessel in some wrongdoing. I assured him this was not so and I forgot about it.

J.Ex. 2. On the evening of August 6, 1992, Sango reported to the second mate complaining of insomnia and loss of appetite and requesting a doctor's visit. *See* Pl.'s Mem. Ex. D (translation of Novo Mesto log for September 7, 1992). The following afternoon, as the Novo Mesto docked at Shed 5, Port of Albany, New York, another crew member discovered Sango hanged by the

---

**1.** The parties submitted ten joint exhibits ("J.Ex."). Plaintiff submitted four additional ex-

hibits with her trial memorandum of law ("Pl.'s Mem.Ex.").

neck in the ship's forecastle. *See* J.Ex. 2. Attempts at resuscitation by the crew and by the Albany Emergency Medical Services failed, and Sango was pronounced dead at 1:30 p.m. *See* J.Ex. 9. The Albany Coroner's Physician classified Sango's death as a suicide. *See* J.Ex. 8.

The only evidence in the record regarding Sango's motivation for committing suicide is the reported statement of Albany Police Sgt. Ron Adriance in a local Albany newspaper that Sango had been "depressed for several days over his job and talk that the shipping firm he worked for was considering lowering wages or getting another crew." Pl.'s Mem. Ex. B.

On December 1, 1992, Mrs. Sango was paid 88,000 Slovenian thalers from her husband's life insurance policy with Plovba. *See* Pl.'s Mem.Ex. C.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Plaintiff failed to specify in either her complaint or her civil cover sheet whether she is bringing this action under this Court's federal question jurisdiction, 28 U.S.C. § 1331, or under this Court's admiralty jurisdiction, 28 U.S.C. § 1333(1). Plaintiff's claim under the Jones Act, 46 U.S.C.App. § 688, may be brought at law or in admiralty because the statute is federal and because the underlying events occurred on the Hudson River, a navigable waterway of the United States. *See Romero v. International Terminal Operating Co.,* 358 U.S. 354, 380–81, 79 S.Ct. 468, 484–85, 3 L.Ed.2d 368 (1959); *see generally* Wethering, *Jurisdictional Bases of Maritime Claims Founded on Acts of Congress,* 18 U.Miami L.Rev. 163 (1963). Claims under the general maritime law may not be brought directly under 28 U.S.C. § 1331, but may be addressed by a district court "pendant to its jurisdiction under the Jones Act" in cases such as this where "the complaint also properly alleges a claim under the Jones Act." *Romero,* 358 U.S. at 381, 79 S.Ct. at 485.

### B. Choice of Law

The parties disagree as to whether the Jones Act, 46 U.S.C.App. § 688, and/or the unseaworthiness doctrine of general maritime law apply to this dispute between a foreign alien seaman and his foreign alien employer.

The Jones Act and the common law unseaworthiness doctrine are largely redundant:

> The Jones Act count and the unseaworthiness count overlap completely: they derive from the same accident and look toward the same recovery. As a matter of jurisprudential elegance or even of common sense it would have been desirable (and would still be desirable) to abandon the cumbersome fiction that two causes of action are involved and to restate the seaman's causes of action for death or injury as being what it is. That has not been done, and in all probability, will never be done. After ten or fifteen years of confusion the admiralty lawyers and the admiralty judges came to understand that the Jones Act count and the unseaworthiness count are Siamese twins. The only danger here is that a non-admiralty lawyer will be retained to handle such a case or that a non-admiralty judge will be called on to decide one.

G. Gilmore & C. Black, *The Law of Admiralty* § 6–1, at 272 (2d Ed.1975), *cited in Karvelis v. Constellation Lines S.A.,* 806 F.2d 49, 51–52 (2d Cir.1986). Because these causes of action are nearly identical, the Supreme Court has held that both counts should be subject to the same choice of law analysis. *See Romero,* 358 U.S. at 382, 79 S.Ct. at 485–86.

Use of the Jones Act and the unseaworthiness doctrine is limited to "suits in which the defendant has some substantial contact with the United States." *Koupetoris v. Konkar Intrepid Corp.,* 535 F.2d 1392, 1396 (2d Cir.1976). The Supreme Court has identified eight factors to determine whether an employer's contacts are in fact "substantial": (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. *See Hellenic*

*Lines Ltd. v. Rhoditis,* 398 U.S. 306, 308–09, 90 S.Ct. 1731, 1733–34, 26 L.Ed.2d 252 (1970).

■ In this case, the alleged wrongful act took place in the days preceding the Novo Mesto's landing at the Port of Albany. It is not clear from the record where the ship was when Sango's depression began or when he called his wife on August 17, 1992. The Novo Mesto flew the flag of St. Vincent and the Grenadines. The injured seaman was domiciled in and held allegiance to Croatia. The defendant shipowner based its operations in and held allegiance to Slovenia. The employment contract with the shipping company was executed in what is now Slovenia but was then Yugoslavia, and the contract for the specific voyage was executed in Ecuador. Neither side has expressed any desire to move this case to a foreign forum, nor have they indicated the viability of such a transfer. This case thus meets only one of the *Hellenic Lines* criteria, the site of the wrongdoing, and even that is in doubt since the plaintiff is attacking defendants' conduct prior to the ship's arrival in Albany.

Plaintiff nonetheless argues that the decedent's annual visits to United States ports in the course of his regular employment with the defendants demonstrate some substantial contact between the defendants and the United States. Indeed, the Supreme Court has expressed its reluctance to allow an "alien owner, engaged in an extensive business operation in this country, [to] have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act 'employer.'" [2] *Hellenic Lines,* 398 U.S. at 310, 90 S.Ct. at 1734. While insuring such competitive equality may well be a compelling reason to apply the Jones Act to foreign employers, plaintiff here has failed to show anything approaching the "extensive business operations" of the defendant required by *Hellenic Lines. Id.* The only testimony showing Plovba's regular business contacts in this country comes from the plaintiff's certification, noting that her husband visited this country once a year.

Plaintiff asks the Court to "infer that the defendant had regular, frequent, and substantial contact with the forum" from the "defendant's failure to produce the ship's log and its silence in submitting an affidavit or other documentary evidence to the contrary." Pl.'s Reply Mem. at 6–7. During discovery, plaintiff requested the log of the Novo Mesto. Defendant complied with that request by submitting a translated copy of the ship's log for the date of Sango's suicide, *see* J.Ex. 4, and offering to send a complete copy should plaintiff desire. *See* Pl.'s Mem.Ex. C at 2 (Facsimile from Plovba dated February 29, 1996) ("We have the deck log for the voyage in question. It is written in Slovenian language. Regarding Mr. Rafael Sango there is only a notation on September 7, 1992. Please inform if you need original log book and if it is enough to translate only the remarks on the September 7, 1995[sic].") There is no indication in the record that plaintiff's attorney responded to this letter or made any further request for the entire log or for other business records of Plovba. Even if the Novo Mesto's entire log revealed several stops in United States ports, this would not establish that Plovba, an international shipping company with many other ships, had "extensive business operations" as required by *Hellenic Lines,* 398 U.S. at 310, 90 S.Ct. at 1734–35.

Because plaintiff has not shown that Plovba had substantial contacts with the United States, neither the Jones Act nor the general maritime unseaworthiness doctrine govern this case.

Upon a finding that substantive federal law does not apply, an action brought under 28 U.S.C. § 1331 would ordinarily be dismissed pursuant to Fed.R.Civ.P. 12(h)(3). However, in an action brought in admiralty under 28 U.S.C. § 1333(a), this Court may retain jurisdiction and apply foreign substantive law.

■ That task is particularly difficult here because the substantive foreign law the Court is likely to apply is that of the former Yugoslav republics of Slovenia and Croatia,

---

2. On the other hand, a foreign company has every right to avoid the responsibilities of the

Jones Act by limiting its business contacts with the United States.

nations which are politically unstable.[3] In addition, due to the recent dissolution of Yugoslavia, it is virtually impossible to determine whether to apply the law of Croatia, Slovenia, or the former Yugoslavia. The parties have provided no assistance in making such a determination or in providing the relevant statutory materials to the Court. Where both parties incorrectly assumed the applicability of United States law, the district court is not required to take judicial notice of the correct foreign law. *See Clarkson v. Shaheen,* 660 F.2d 506, 512 n. 4 (2d Cir.1981) (Since Fed.R.Civ.P. 44.1 requires a party to give the Court notice of its intention to assert foreign law, "the district court was not obligated to take judicial notice of Canadian law and correctly applied forum law.").

Accordingly, plaintiff has failed to state a claim against defendant Plovba and that action is dismissed with leave to replead under appropriate foreign law.[4]

### C. Other Defendants

Plaintiff has also failed to state any claim against the remaining defendants. James E. Curran & Co. ("Curran") is a New York corporation which chartered the Novo Mesto to pick up a load of scrap metal in Albany on the date of Sango's suicide. Curran was never the employer of Sango, and "only an employer can be liable under the Jones Act." *Karvelis,* 806 F.2d at 52. While an action for unseaworthiness can stand against the vessel's charterer, *see Reed v. The Yaka,* 373 U.S. 410, 412–13, 83 S.Ct. 1349, 1351–52, 10 L.Ed.2d 448 (1963), Curran had not yet taken control or possession of the Novo Mesto at Port of Albany when Sango killed himself. On September 7, 1992, the ship had just arrived in port and still had to unload its previous cement cargo before taking on Curran's scrap metal. This action is dismissed as to defendant Curran. Does 1–5 are other owners, operators, and charterers of the

Novo Mesto. Since Does 1–5 remain unnamed and were presumably never served with the complaint, this action is dismissed as to Does 1–5 pursuant to Fed.R.Civ.P. 4(m).

### III. CONCLUSION

Plaintiff has failed to state a valid claim against any of the defendants. This case is dismissed.

The Clerk of the Court is hereby ORDERED to close this case.

SO ORDERED:

---

**3.** Under the traditional law of the flag, a ship is governed by the law of the nation whose flag she flies. But because foreign registration is, in recent times, "eagerly offered by some countries," courts now must look beyond the flag to the actual allegiance of the shipowner to determine whose law governs. *Lauritzen v. Larsen,* 345 U.S. 571, 587, 73 S.Ct. 921, 930–31, 97 L.Ed. 1254 (1953). Here, while the Novo Mesto flies

the flag of St. Vincent and the Grenadines, the shipowner is clearly Slovenian.

**4.** I note without deciding that under any substantive law, it would be very difficult for plaintiff to prove negligence on the part of Plovba based on the meager evidence in this record.